DION N. COMINOS  (SBN: 136522)
*dcominos@gordonrees.com*
CATHERINE A. SALAH  (SBN: 154524)
*csalah@gordonrees.com*
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

Attorneys for Defendant
COMPASS VISION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE and TRACEY MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>COMPASS VISION, INC.; NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS, and DOES ONE THROUGH TWENTY,<br><br>Defendants.    / | CASE NO. CV 07-05642 EDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPASS VISION, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>**[Fed. R Civ. P. 12(b)(6)]**<br><br>Date:    February 26, 2008<br>Time:    9:00 a.m.<br>Crtrm:   E<br>Judge:   Hon. Elizabeth D. Laporte<br><br>Complaint Filed:  November 6, 2007 |

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

CMPVS/1046170/5289610v.1

Pursuant to Federal Rule of Civil Procedure 12 (b)(6), Defendant Compass Vision, Inc. ("Compass Vision") respectfully submits the following Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted.

## I.     **INTRODUCTION**

Plaintiffs are nurses and pharmacists who, because of admitted drug and/or alcohol addiction, were required by either the California State Board of Nursing or the State Board of Pharmacy, as part of their recovery programs, to submit to random drug and alcohol testing. As Plaintiffs concede in their Complaint, random screening is not a requirement for registered nurses and pharmacist unless they have an admitted history of addiction.

The testing methodology selected by the State Boards to which Plaintiffs were required to submit is known as "EtG" testing. The EtG test is a biomarker test that detects the presence of ethyl glucuronide, a metabolite of ethanol (alcohol) in urine samples.

In a novel theory, Plaintiffs assert in their Complaint that Defendant Compass Vision, which served as a Third Party Administrator of the EtG testing services, is somehow responsible for the fact that Plaintiffs tested positive for EtG while participating in their recovery programs and the resultant action taken by the State Boards, including suspension from their jobs.

There is no legal precedent in California, or any other jurisdiction, which supports this novel theory of liability against a Third Party Administrator, such as Compass Vision. Nor do Plaintiffs articulate any basis for their single cause of action for negligence against Compass Vision. Even a cursory review of the five counts for negligence pled on behalf of each Plaintiff for reveals the absence of any facts alleging that Compass Vision owed Plaintiffs a duty of care. Without a duty, Compass Vision cannot, as a matter of law, be negligent.

The reason for Plaintiffs' failure to plead facts demonstrating a duty of care can be surmised from the numerous concessions included in Plaintiffs' Complaint, including their concession that: (1) the State of California, not Compass Vision, decided to institute EtG testing for healthcare professionals participating in drug and alcohol testing programs, (2) Plaintiffs' respective State Boards, not Compass Vision, required Plaintiffs to submit to EtG testing as a condition of employment following their admission of drug or alcohol addiction, (3) the State

-1-

Boards administer the licensing privileges of registered nurses and pharmacists, (4) Compass Vision is not a testing laboratory but, rather, only served as a TPA of the testing program, (5) Compass Vision did not perform testing on any of Plaintiffs' urine samples in issue and (6) the State Boards, not Compass Vision, decided what action to take in response to Plaintiffs' positive test results.

Significantly, unlike a handful of cases in other jurisdictions in which Plaintiffs have alleged negligent collection, handling or testing of their samples, and in which the courts have found a duty on the testing laboratory to handle Plaintiff employees' samples with reasonable care, **Plaintiffs in this matter do not allege that Compass negligently collected, handled or tested their respective urine samples in which EtG was detected.** Rather, the gravamen of Plaintiffs' negligence claim is that Defendants, "by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results." Such allegation does not state a cognizable claim for negligence.

Plaintiffs' claims are nearly identical to those advanced by Plaintiffs in the action *Garlick v. Quest Diagnostics, Inc.*, et. al., pending in the United States District Court for the District of New Jersey, Case No. 06-cv-6244. On December 28, 2007 the Hon. Dennis M. Cavanaugh issued an Opinion in that action, **<u>dismissing</u>** Plaintiffs' Complaint against defendant testing laboratories and third party administrators pursuant to Fed. R.Civ.P. 12(b)(6) on the basis that Plaintiffs' Complaint did not raise a right to the relief sought against defendants for negligence.[1] (See Opinion, attached as Exhibit 1 to Compass Vision's Request for Judicial Notice, filed concurrently herewith.) Judge Cavanaugh commented that while there is authority in some jurisdictions that a testing laboratory owes a duty to the testing individual to collect and handle

---

[1] Judge Cavanaugh expressly noted in connection with the Plaintiffs' negligence claim, "[T]here is no conflict of law analysis necessary to determine whether Plaintiffs state a claim upon which relief can be granted . . . as the standards for establishing a negligence claim are the same across states. (See *Garlick* Opinion, page 7, Paragraph B and Page 8, Paragraph C.)

-2-

MEMORANDUM OF POINTS & AUTHORITIES ISO
COMPASS VISION'S MOTION TO DISMISS                                                  CASE NO. CV 07-05642 EDL

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  specimens with a duty of care to those individuals whose specimens they test, unlike these cases
2  the allegations in the *Garlick* Plaintiffs' Complaint do not allege that the testing lab or third party
3  administrator handled the specimens improperly, or that the tests were improperly performed, or
4  that the tests conducted did not show the presence of EtG.  As such, the cases were not
5  controlling.
6       As in the *Garlick* action, Plaintiffs in the instant action make no such allegations against
7  Compass Vision.  And, as in *Garlick,* Plaintiffs' Complaint does not raise a right to the relief
8  sought against Compass Vision for negligence.  It follows that Plaintiffs' Complaint against
9  Compass Vision should properly be dismissed.

## II.    PROCEDURAL BACKGROUND

11       Plaintiffs filed their Complaint on November 6, 2007.  Compass Vision complied with
12  Plaintiffs' request that service of Summons be waived and, as part of such agreement, had until
13  60 days after November 11, 2007 (January 10, 2008) to file the instant motion.  (See Declaration
14  of Catherine A. Salah and Exhibit "A" thereto.)  This motion, therefore, is timely.

## III.    FACTUAL BACKGROUND

**A.    Plaintiffs' Allegations**

    **1.    Plaintiffs are Healthcare Professionals With Admitted Drug and/or Alcohol Addiction**

19       Plaintiffs, each of whom is either a licensed nurse or pharmacist, admitted to alcohol or
20  drug addiction.  (Complaint at ¶¶ 38, 50, 60, 70 and 80.)  California registered nurses and
21  pharmacists, who have an admitted history of addiction, are allowed to enter into a Diversion
22  Program Recovery Contracts with Maximus, which serves as the administrator of the Program.
23  (Complaint at ¶¶ 8 and 15.)  Random drug screening is not a requirement for registered nurses
24  and pharmacists in California, unless they have an admitted history of addiction, and have
25  voluntarily entered into an agreement as part of continued employment or are placed on
26  probation.  (Complaint at ¶ 16.)  Each Plaintiff tested positive for EtG (most of them multiple
27  times) while participating in their respective Recovery Programs.  (Complaint at ¶¶ 40, 41, 52,
28  53, 62, 63, 72, 73 and 82.

-3-

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

### 2. EtG Testing Was Reported by Medical Doctors as Proof of Alcohol Consumption

EtG was reported by Gregory Skipper, M.D. and Friedrich Wurst, M.D., in November 2002 at an international meeting of the American Medical Society, to provide proof of alcohol consumption as much as 5 days after drinking an alcoholic beverage. (Complaint at ¶ 17.) In 2003, because of the reports by Doctors Skipper and Wurst and "other reportedly remarkable results (e.g., positive findings, confirmed by admissions by the tested individuals, after traditional urine tests had registered negative), EtG testing began in the United States." (Complaint at ¶18.)

### 3. Role of California State Board of Nursing and State Board of Pharmacy

The State of California instituted EtG testing. (Complaint at ¶ 23.) The State Boards of Nursing and Pharmacy, through Maximus, became a signatory to a service contract with Compass as its TPA and NMS as a testing lab facility for EtG testing programs. (Complaint at ¶ 23.) The California State Boards of Nursing and Pharmacy "administer, inter alia, the licensing privileges of registered nurses and pharmacists." (Complaint at ¶ 13.)

### 4. Compass Vision Served as a Third Party Administrator

Plaintiffs allege that Compass contacted with the California State Board of Nursing and the California State Board of Pharmacy ". . . to be the TPA administering drug and alcohol testing of nurses and pharmacists. . . " (Complaint at ¶ 8.) Plaintiffs allege that "Compass is a Third Party Administrator ("TPA"), specializing in the design, implementation, and management of drug and alcohol testing programs, including the collection of urine samples." (Complaint at ¶ 7.) "Compass provided TPA services to the California State Boards of Nursing and Pharmacy." (Complaint at ¶ 13.)

### 5. NMS Performed the Testing of Plaintiffs' Samples in Issue

Plaintiffs allege that Defendant "NMS through defendant Compass contracted with the California State Boards of Nursing and Pharmacy, through Maximus, to do EtG (ethyl glucuronide) testing of health care providers, including Plaintiffs." (Complaint at ¶ 10.) According to Plaintiffs' Complaint, the State Boards of Nursing and Pharmacy became a

-4-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

signatory to a service contract with NMS as a testing lab facility for EtG testing programs. (Complaint at ¶ 23.) Each of the five Plaintiffs alleges that their positive EtG tests on urine samples was performed by NMS. (Complaint at ¶ ¶ 40, 41, 52, 53, 62, 63, 72, 73 and 82.)

## B. What Plaintiffs Do Not Allege

Equally important as what Plaintiffs allege in their Complaint, if not more so, is what Plaintiffs do not allege. Specifically, Plaintiffs do **not** allege that:

- Compass is responsible for instituting EtG testing in California. (Rather, as set forth above, Plaintiffs aver that the it was the State of California that was responsible for the same.)

- Compass is responsible for the decision to have nurses and pharmacists participating in the California State Boards of Nursing and Pharmacy Recovery Programs submit to EtG testing as a way to monitor the participants drug and/or alcohol use.

- Compass is responsible for administering the licensing privileges of registered nurses or pharmacists. (Rather, Plaintiffs plead that the respective Boards are responsible for doing so.)

- Plaintiffs are known to Compass or have any fiduciary relationship with Compass;

- Plaintiffs paid any money to Compass for any services;

- Compass performed any testing of Plaintiffs' samples;

- Compass was negligent in the collection of any of Plaintiffs' samples;

- Compass was negligent in the handling of any of Plaintiffs' samples;

- Compass was negligent in the testing of any of Plaintiffs' samples.

Moreover, Plaintiffs do **not** allege that their respective urine samples were not actually positive for EtG. Even more significantly, while Plaintiffs assert that "Defendants, by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results" (Complaint at ¶ 32) ***none* of the Counts alleged by the respective Plaintiffs alleges that Compass Vision owed Plaintiffs a duty.** In fact, conspicuously missing from each of the six counts alleged on behalf of Plaintiffs is the word

-5-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

"duty" or the allegation that Compass Vision breached any duty owed to Plaintiffs.

## C. EtG Testing Has Been Upheld by the Courts as a Valid Testing Methodology

Ethyl glucuronide (EtG) is a unique metabolite formed through metabolism of ethanol. To be confirmed positive, the metabolite concentration must be equal to or greater than the established confirmation cutoffs. EtG is produced within the body only when alcohol is present.

EtG testing has been upheld by the courts as a valid testing methodology. (See Opinion by the Hon. James Gardner Colins in the matter *Luz M. Perez-Rocha, M.D. v. Commonwealth of Pennsylvania*, et. al., attached as Exhibit 2 to Compass Vision's Request for Judicial Notice.) In upholding the suspension of the license to practice medicine in the *Perez-Rocha* matter, Judge Colins cited to the Licensing Board's Adjudication and Order in that matter that "[M]any studies support EtG testing as an appropriate and reliable means for indicating the presence of alcohol in the subject's system." (See Exhibit 2 to Request for Judicial Notice, page. 5.)

## IV.  LEGAL AUTHORITY

### A. Compass' Motion is Properly Granted Pursuant to Federal Rule of Civil Procedure 12 (b)(6) Since Plaintiffs' Complaint Does Not State a Claim Upon Which Relief Can Be Granted

Rule 12 (b)(6) of the Federal Rules of Civil Procedure provides a mechanism for disposing of legally insufficient claims. This Rule provides that a motion to dismiss is proper where a pleading fails to state a claim upon which relief can be granted.

### B. Plaintiffs Cannot State a Claim for Negligence Against Compass Vision as a Matter of Law Since They Have Not Established That Compass Vision Owed Them a Duty

Plaintiffs' purported claim for negligence against Compass Vision does not state a cognizable claim for relief under any theory of law. In a jumble of accusations, Plaintiffs allege that Defendants acted negligently by:

- Marketing their results without conducting adequate scientific or medical studies;

- Establishing cut-offs over which test results would be reported as "positive" that were arbitrary and scientifically unreliable and invalid;

- Promoting the EtG test with unsupported and false statements that a positive EtG test would unequivocally establish that the subject individual had consumed alcoholic beverages;

-6-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

- Publishing warnings that the failure to conduct such a test would be negligence on the part of an employer or licensing board;

- Falsely asserting that the EtG test was the "gold standard" in ferreting out former alcoholics or drug users who were resuming or beginning to engage in prohibited alcoholic consumption in occupations requiring a "zero tolerance";

- Falsely asserting that EtG is not detectable in the urine unless an alcoholic beverage has been consumed, thereby concealing that incidental or involuntary exposure or consumption of products containing alcohol could result in positive findings;

- Failing and refusing to re-evaluate and re-set cut-off limits at levels that were scientifically sound and reliable markers for detecting the prohibited activity of alcoholic beverage consumption, and excluding other causes for their results;

- Failing to heed the warnings or cautionary advisories issued by Dr. Skipper, SAMHSA, and others – that the cut-off levels were unreliable and arbitrary, and that the incidental use could trigger positive results at levels at or above the cut-offs – and, instead, denying publicly and maintaining the warnings were insufficient to discredit the EtG test and its cut-off limits;

- Failing to protect the plaintiffs from foreseeable substantial harm in the form of disciplinary and punitive measures, when their EtG test systems were employed and relied upon for their accuracy and reliability;

- Utilizing, reporting and interpreting the EtG results of plaintiffs to assert that plaintiffs were violating their recovery by intentionally drinking alcoholic beverages.

(Complaint at ¶ 36.)

None of the above allegations alleges the requisite facts necessary to state a claim for negligence. It is hornbook law that in order to state a claim for negligence, Plaintiffs must demonstrate duty, breach of duty, legal causation and damages. *Friedman v. Merck & Co., Inc*. 107 Cal. App. 4th 454, 463 (2003). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v. Arthur Young & Co*. 3 Cal. 4th 370, 397 (1992).

Preliminarily, Plaintiffs' broad, conclusory allegations that Compass Vision was negligent in connection with "marketing," "promoting," "publishing" and "falsely asserting" certain information are wholly irrelevant since Plaintiffs' Complaint nowhere alleges causes of action for either negligent or intentional misrepresentation. Even is Plaintiffs had pled such claims, they would clearly fail since Plaintiffs' Complaint nowhere alleges that they were the recipients of any of the purportedly disseminated information.

-7-

1    While there is authority in some jurisdictions that a testing laboratory owes a duty to the testing individual to collect and handle specimens with reasonable care, unlike those cases, the allegations in Plaintiffs' Complaint do not allege that Defendant NMS, the testing lab, or Compass Vision handled their specimens improperly, that the tests were improperly performed, or that the tests conducted did not show the presence of EtG.  Compass Vision merely provided TPA services inn connection with EtG testing which the State Board of Nursing or Pharmacists ordered Plaintiffs to submit.  Nothing in the Complaint alleges that Compass Vision owed Plaintiffs a duty of care.  Plaintiffs concede that EtG was found in their urine tests.  Accordingly, Compass could not have breached its duty to use reasonable care when it allegedly administered the test results, because the Plaintiffs' urine contained EtG, which is what was being tested for.

Defendants must have owed Plaintiffs a duty in order to state a claim for negligence. There is no specific allegation in their Complaint to hold Compass liable for their alleged damages since, even if Compass actually collected any samples or performed testing thereon, which allegations are denied, it would only have had the responsibility to administer the EtG tests with reasonable care.  Nothing in the Complaint alleges that Compass failed to do so, or did so negligently.  Plaintiffs allege that Defendants, by promoting, advertising, marketing, selling, contracting with licensing boards and professional associations, collecting urine samples and utilizing the EtG test to allegedly establish that the tested individual consumed an alcoholic beverage, created a duty to use a reasonable degree of care to avoid erroneous test results.  As noted above, however,  Plaintiffs do not assert that these alleged acts are accompanied by any duty owed to Plaintiffs.

The only case law on the issue of duty extends to laboratories and hospitals and relates to their collection and handling of urine specimens for employment-related drug testing.  None of these cases goes anywhere close to imposing a duty of care on a third-party administrator of drug and/or alcohol testing programs to the persons tested under the circumstances alleged by Plaintiffs.  Rather, each of the out-of-state cases involve a negligence claim where the issue presented to the court was whether a **drug testing laboratory** can be found to have a duty of care to persons tested **for negligently performing, handling or contaminating drug tests**.

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

-8-

MEMORANDUM OF POINTS & AUTHORITIES ISO
COMPASS VISION'S MOTION TO DISMISS                                      CASE NO. CV 07-05642 EDL

For example, in *Sharpe v. St. Luke's Hospital*, 573 Pa. 90, 821 A.2d 1215 (Pa. 2003) an employee who was terminated after she tested positive for cocaine brought a negligence action against the hospital which had collected her urine sample. Plaintiff alleged that the hospital had **negligently mishandled** the sample. Plaintiff alleged that "numerous events" transpired at the hospital that affected the chain of custody associated with her urine sample, as a result of which it was **misidentified and/or mishandled**. (*Sharpe* at p. 92.) In light of the evidence of negligence in the collection and/or handling, the court found that there was a sufficient relationship between the hospital and plaintiff to justify the imposition of a duty upon the hospital to exercise reasonable care **in the collection and handling** of the urine specimen and that it was foreseeable to the hospital that any negligence **with respect to the handling** of the specimen could harm the employee's employment. In so holding, the court in *Sharpe* pointed to the substantial public interest in "ensuring that the **medical facilities involved in the testing**" exercise a reasonable degree of care to avoid erroneous test results occurring because of negligence. (*Sharpe* at p. 99.)

Here, unlike the situation presented to the court in *Sharpe,* Plaintiffs in the instant matter are not alleging negligence in the handling of their samples.

In *Stinson v. Physicians Immediate Care Ltd.*, 269 Ill.App.3d 659 (1995) claims were brought against a **drug testing laboratory** for **negligent testing and negligent reporting.** In *Stinson*, plaintiff alleged that defendant laboratory was responsible for: (1) collecting Plaintiff's sample, (2) performing the drug testing, and (3) reporting the results of Plaintiff's tests to his employer. Plaintiff in that action alleged numerous negligent acts in the collecting and handling of his specimen by the testing laboratory, including claims that the lab: (1) failed to instruct its employees of the danger of specimen contamination; (2) failed to use specimen containers with sealable and tamper-evident lids; (3) failed to seal the specimen containers; (4) failed to obtain the plaintiff's initials or otherwise identify the specimen as belonging to the plaintiff; (5) conducted the drug-screening test so that the results were not accurate and were in error; (6) erroneously tested and reported that the plaintiff had cocaine in his body and (7) failed to use routinely followed precautionary procedures and otherwise conducted the drug-screening test so

-9-

1 that the results erroneously diagnosed cocaine in his body. (*Stinson* at p. 661.) The plaintiff in
2 *Stinson* further alleged that the lab falsely reported the results to his employer. (*Id.* at p. 660.)

3       The court in *Stinson* found the existence of a duty based upon the "close relationship" between a plaintiff and defendant if it is reasonably foreseeable that the plaintiff will be harmed "if the defendant negligently reports the results to the employer." (*Stinson* at p. 664.) The court further commented, "[T]he **drug-testing laboratory** is in the best position to guard against the injury, **as it is solely responsible for the performance of the testing and the quality control procedures**." (*Ibid.*, emphasis added.) That the *Stinson's* court's ruling was expressly limited to drug-testing laboratories cannot be disputed given the court's holding that "[W]e therefore hold that a **drug-testing laboratory** owes a duty of reasonable care to persons **whose specimens it tests** for employers or prospective employers." (*Stinson* at p. 665.)

      Here, Plaintiffs nowhere alleges that Compass Vision was a drug-testing laboratory. Given that the facts and the issues presented to the court in *Stinson* are entirely disparate from those before this Court, *Stinson* is not controlling authority.

      Similarly, *Duncan v. Afton Inc.*, 991 P.2d 739 (Wyo. 1999) involved **alleged improper collection and handling** of a urine specimen. Plaintiff in that action claimed that the temperature of his specimen had been incorrectly noted and, further, that his specimen had remained unsealed for a period of time, allowing for contamination. The court in *Duncan* ruled that **the collection company** owed a duty of care to the employee when **collecting**, **handling**, and **processing** plaintiff's urine specimen for the purpose of performing substance abuse testing. (*Duncan* at p. 740.)

      *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175 (La.App.5th Cir. 1991) is both factually and legally distinguishable as well. In that case, the plaintiff filed an action against a **drug testing laboratory** alleging **negligent conducting and reporting** of a post-accident urinalysis to plaintiff's former employer, a result of which Plaintiff was terminated. The court in *Elliott* determined that the drug testing laboratory, acting as an independent contractor for plaintiff's employer in **conducting drug testing** on an employee, **owed a duty of care to the employee to analyze the body fluid in a scientifically reasonable manner**. Once again, the

-10-

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

court in *Elliott* made it clear that it's ruling was limited to drug testing laboratories stating, "[W]e find that **drug testing laboratories** . . . owe a duty of care to the testee/employee…" (*Elliott* p. 176, emphasis added.) Given Plaintiffs' admission that Compass Vision is not a drug testing laboratory and did not negligently collect or analyze her samples, *Elliot* provides no controlling authority in support of Plaintiffs' novel theory that Compass Vision owed them a duty of care.

In addition to the fact that none of the above decisions are analogous to the issues presented by Plaintiffs' Complaint in this matter, it should be noted that a number of jurisdictions disagree in the first instance that a testing laboratory owes a duty of care to the individuals tested. In the Texas Supreme Court's decision in *SmithKline Beecham Corp. v. Doe,* 903 W.2d 347 (Tex. 1995) the court held that a laboratory conducting drug testing under a contract with an employer has no relationship with, and thus, no duty to a prospective employee. (*SmithKline* at p. 356.) Here, the involvement of Compass Vision does not even rise to the level of the defendant laboratory in *SmithKline*, which was the entity responsible for conducting the drug testing at issue in that action. Following **Smithkline,** Compass Vision did not, as a matter of law, owe a duty to Plaintiffs.

In *Hammond v. City of Philadelphia,* 164 F. Supp. 2d 481, 483 (E.D. Pa. 2001), a police officer terminated from employment as a result of alleged drug use brought a claim against the drug testing company for negligence. Plaintiff asserted that defendant drug-testing company owed him a duty of care to: (1) properly maintain control of his urine sample to prevent tampering and contamination; (2) properly maintain testing devices for accurate testing; and (3) ensure that the tests were performed accurately. The court in *Hammond* held that, for negligence purposes, "[A] drug laboratory owes no duty of care to a customer's employee when it performs drug screening tests on the employee on behalf of the customer." (*Hammond* at p. 483, citing *Ney v. Axelrod*, 723 A.2d 719, 722 (Pa. Super. 1999); *Promubol v. Hackett*, 454 Pa. Super. 622, 686 (1996); *Tomko v. Marks,* 412 Pa.Super. 54 (1992); and *Elia v. Erie Ins. Exchange*, 398 Pa.Super. 4233 (1990).) The *Hammond* court explained its rationale for its ruling as follows:

> Drugscan tested plaintiff's urine on behalf of the Department. There are no allegations of any other relationship between Drugscan and Plaintiff. Drugscan

-11-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

owed no duty of care to plaintiff. In the absence of a duty of care, plaintiff cannot make out a negligence claim against Drugscan. (*Ibid.*)

Accordingly, the *Hammond* court dismissed the plaintiff's Complaint for failure to state a claim upon which relief could be granted. (*Hammond* at p. 484.)

In *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705 (2003) a truck driver who was terminated for failing a random drug test brought a negligence action against his former employer, alleging the employer failed to use ordinary care in collecting his urine specimen for testing. On the employer's Petition for Review, the Texas Supreme Court held that employers who conduct in-house urine specimen collection under Department of Transportation regulations for random drug-testing of employees owe no duty of care to employees to conduct the drug test with reasonable care. (*Mission* at pp. 711-712.)

Two other cases which in which the courts have found no duty include *Herbert v. Placid Ref. Co.,* 564 So. 2d 371, 374 (La.Ct.App. 1990) [holding that a drug testing laboratory owes no duty of care to test subjects because its relationship is with the employer, not the employee] and *Ney v. Axelrod*, 723 A.2d 719, 722 (Pa.Super.Ct. 1999) [Holding that a drug retesting laboratory did not owe a prospective employee a duty of care].) In *Ney,* the court held ". . . we are not willing to create a theory of liability for negligent doctors or medical laboratories that have contracted with third parties for employment-related testing. Such causes of action do not identify a substantial harm to an identifiable and readily discernable class of plaintiffs such that we feel compelled to create liability based on a public policy rationale." (*Ney* at p. 722.)

Those courts which have addressed similar claims asserted by Plaintiffs in the instant matter, i.e., that a positive drug or alcohol test result was caused by a source other than the use of drugs or alcohol, have dismissed the claims, finding no legal owed by the testing laboratory to the person tested. See *Caputo v. Compuchem Labs, Inc.*, 1994 WL 100084, aff'd 37 F.3d 1485 (3rd Cir. 1994); *Cooper v. Laboratory Corp. of Am. Holdings, Inc*. 150 F.3d 376 (4th Cir. 1998) (no duty to warn that fermentation of glucose in urine specimen may cause positive alcohol result; *Vargo v. National Exch. Carriers Ass'n, Inc*. 376 N.J. Super. 364, 380-82 (App.Div. 2005) (holding that a laboratory owes no duty to warn of potential alternate causes of positive

-12-

drug test results.)

*Caputo, supra*, appears to be the only reported case involving an allegation by the plaintiff that the test cut-offs were too low. In that case, the court found that defendant testing laboratory owed no duty to plaintiff in connection with this allegation. In response to the plaintiff's argument that defendant chose too low a number for the baseline, positive screening cut-off, the court commented, "[C]onspicuously absent from plaintiff's argument, however, is any basis for imposing such a broad duty upon the defendant." Similarly absent from Plaintiffs' Complaint in the instant matter is any basis for imposing such a broad duty on Compass Vision. Thus, the same reasoning applied by the court in *Caputo* in arriving at its determination that defendant did not owe any duty of care is equally applicable to Plaintiffs' negligence claim against Compass Vision.[2]

## C. Plaintiffs' Complaint Fails to State Facts Sufficient to Recover Damages for Emotional Distress Since Plaintiffs Do Not Allege Physical Injury

In connection with their negligence claim against Compass Vision, Plaintiffs assert that they are entitled to recover damages for emotional distress. (Complaint at ¶¶ 46, 56, 66, 76 and 85.) Plaintiffs, however, are barred as a matter of law from recovering emotional distress damages in that they have not plead that they suffered any physical injury. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 485 (2003). In *Yu v. Signet Bank/Virginia*, 69 Cal.App.4th 1377, 1397 (1999) the court instructed, "[I]n general, a plaintiff incurring neither physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, is entitled neither to punitive damages nor to a recovery for emotional distress." See also *Finch v. Brenda Raceway Corp.*, 22 Cal.App.4th 547, 554 (1994) (emotional distress damages are not recoverable when a negligent misrepresentation causes only economic injury); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1040 (1992)(mere negligence will not support a recovery for mental suffering where the defendant's tortious conduct has resulted in only economic injury to the plaintiff).

---

[2] The court in *Caputo* addressed the concerns raised by the Plaintiff therein regarding the use of and potential misuse of drug testing in the employment arena. The court, however, instructed, "The fact that there are reasons to be concerned does not justify imposing unprecedented duties upon a laboratory with the sole function of analyzing and returning a report."

-13-

1 Based on this authority, Plaintiffs' claim for recovery of damages for emotional distress in

2 connection with their negligence claim against Compass Vision is properly dismissed.

3 **D.     Plaintiffs Are Not Entitled to Recover Punitive Damages Since Plaintiffs Have Not Pled Any Facts Which Demonstrate Malice, Fraud, or Oppression by Compass Vision**

4

5 Under the weight of California law, Plaintiffs' claim for punitive damages is also subject

6 to dismissal since their Complaint fails to state facts sufficient to establish a right to recover such

7 damages against Compass Vision.

8 Punitive damages are awarded as a form of public punishment to deter evil intent and

9 actions. Such damages are never awarded as a matter of right. *Schumate v. Johnson Publishing*

10 *Co.,* 139 Cal.App.2d 121, 135 (1956). Punitive damages are generally disfavored under

11 California law. *Beck v. State Fund Mut. Auto. Ins.*, 54 Cal.App.3d 347, 355 (1976). The mere

12 allegation an intentional tort was committed is not sufficient to warrant an award of punitive

13 damages. *Grieves v. Superior Court*, 157 Cal.App.3d 159, 166 (1984); *Taylor v. Superior Court*

14 24 Cal.3d 890, 894 (1979) citing Prosser, Law of Torts (4th ed. 1971) § 2, at pp. 9-10.

15 "There must be circumstances of aggravation or outrage, such as spite or malice or a

16 fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate

17 disregard of the interests of others that his conduct may be called willful or wanton. . . ." *Mock*

18 *v. Michigan Millers Mut. Ins. Co*., 4 Cal. App. 4th 306, 328 (1992.) Moreover, "[A]n award of

19 exemplary damages cannot be based on mere speculation; **it depends instead on a definite**

20 **showing of a willingness to vex, harass, to injure.** The wrongful personal intention to injure is

21 the factor that calls forth the penalty of punitive damages." *Roth v. Shell Oil Co.*, 185 Cal. App.

22 2d 676, 682 (1960.)

23 In order to state a claim for punitive damages, plaintiff must allege *facts*, as opposed to

24 mere conclusions, to demonstrate that Compass Vision was "guilty of oppression, fraud or

25 malice." (Cal. Civ. Code § 3294.) Effective January 1, 1998, section 3294 was amended to

26 strengthen the statutory definitions of both "malice" and "oppression" to require "despicable

27 conduct" that causes "cruel and unjust hardship," and to require proof of this culpable conduct by

28 "clear and convincing" evidence. Civil Code § 3294 defines malice, oppression and fraud as

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

-14-

follows:

> (1) 'Malice' means conduct which is *intended by the defendant to cause injury* to the plaintiff or *despicable conduct* which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others.
>
> (2) 'Oppression' means *despicable conduct* that subjects a person to *cruel and unjust hardship* in conscious disregard of that person's rights.
>
> (3) 'Fraud' means an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the *intention* on the part of the defendant of thereby *depriving a person of property or legal rights* or otherwise causing injury."

(Emphasis added.)

"The requirement of 'despicable' conduct represents a 'substantive limitation on punitive damage awards. Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base, 'vile, or 'contemptible.'" *Shade Foods v. Innovative Product Sales* 78 Cal.App.4th 847, 891 (2000), quoting *College Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 725 (1994). As stated in *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal.App.3d 1149, 1154 (1986):

> The wrongdoer 'must act with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights.' [Citations omitted.] Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy. The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. Unhappily, as a society, we must tolerate without added retribution these all too common lapses in ourselves.

In *Yu v. Signet Bank*, *supra*, 1377, 1397, the court stated that, in general, a plaintiff incurring neither physical impact nor physical damage, and whose loss is solely economic, is not entitled to punitive damages. In *Jackson v. Johnson*, 5 Cal.App.4th 1350, 1354-1355, involving a claim for legal malpractice, the court held, "[S]imple negligence, no more, was alleged. Such allegation falls far short of the 'oppression, fraud, or malice' required by Civil Code section 2394." See also *Grieves v. Superior Court, supra*, 157 Cal.App.3rd at pp.166-168.

As set forth at length above, Compass Vision served as a TPA of the EtG testing program to which Plaintiffs were required by the State of California and their licensing boards to submit. As in *Jackson*, Plaintiffs' Complaint is one for "simple negligence." The Complaint fails to

-15-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

plead any evil intent or motive on the part of Compass Vision, nor any intentional conduct directed by Compass Vision against Plaintiffs that comes anywhere close to demonstrating the requisite "base," "vile" or "contemptible" conduct.  Further, Plaintiffs' damages are for economic harm and thus do not give rise to any entitlement to punitive damages.  Permitting Plaintiffs in this instance to plead entitlement to such damages, therefore, would be contrary to California law.

### V. CONCLUSION

Plaintiffs' Complaint, which fails to allege any facts demonstrating the existence of a duty on the part of Compass Vision, does not raise a right to the relief sought against Compass Vision for negligence.  Pursuant to Fed. R.Civ. P. 12(b)(6), therefore, this motion is properly granted and Compass Vision respectfully requests that Plaintiffs' Complaint be dismissed, in its entirety, with prejudice.

Dated: January 9, 2008                                    GORDON & REES LLP


                                                          By:  /s/ Catherine A. Salah
                                                          DION N. COMINOS
                                                          CATHERINE A. SALAH
                                                          Attorneys for Defendant
                                                          COMPASS VISION, INC.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL BACKGROUND ................................................................................. 3

III. FACTUAL BACKGROUND .......................................................................................... 3

    A. Plaintiffs' Allegations ........................................................................................... 3

        1. Plaintiffs are Healthcare Professionals With Admitted Drug and/or Alcohol Addiction ................................................................................... 3

        2. EtG Testing Was Reported by Medical Doctors as Proof of Alcohol Consumption ................................................................................ 4

        3. Role of California State Board of Nursing and State Board of Pharmacy ................................................................................................. 4

        4. Compass Vision Served as a Third Party Administrator ........................ 4

        5. NMS Performed the Testing of Plaintiffs' Samples in Issue .................. 4

    B. What Plaintiffs Do Not Allege ............................................................................. 5

    C. EtG Testing Has Been Upheld by the Courts as a Valid Testing Methodology ......................................................................................................... 6

IV. LEGAL AUTHORITY ................................................................................................... 6

    A. Compass' Motion is Properly Granted Pursuant to Federal Rule of Civil Procedure 12 (b)(6) Since Plaintiffs' Complaint Does Not State a Claim Upon Which Relief Can Be Granted ................................................................... 6

    B. Plaintiffs Cannot State a Claim for Negligence Against Compass Vision as a Matter of Law Since They Have Not Established That Compass Vision Owed Them a Duty .............................................................................................. 6

    C. Plaintiffs' Complaint Fails to State Facts Sufficient to Recover Damages for Emotional Distress Since Plaintiffs Do Not Allege Physical Injury ............ 13

    D. Plaintiffs Are Not Entitled to Recover Punitive Damages Since Plaintiffs Have Not Pled Any Facts Which Demonstrate Malice, Fraud, or Oppression by Compass Vision ........................................................................ 14

V. CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Beck v. State Fund Mut. Auto. Ins.*
  54 Cal.App.3d 347 (1976) .................................................................................................. 14
*Bily v. Arthur Young & Co.*
  3 Cal. 4th 370 (1992) ........................................................................................................... 7
*Caputo v. Compuchem Labs, Inc.*
  1994 WL 100084 ........................................................................................................ 12, 13
*College Hosp. Inc. v. Superior Court*
  8 Cal. 4th 704 (1994) ......................................................................................................... 15
*Cooper v. Laboratory Corp. of Am. Holdings, Inc.*
  150 F.3d 376 (4th Cir. 1998) ............................................................................................. 12
*Duncan v. Afton Inc.*
  991 P.2d 739 (Wyo. 1999) ................................................................................................. 10
*Elia v. Erie Ins. Exchange*
  398 Pa.Super. 4233 (1990) ................................................................................................. 11
*Elliott v. Laboratory Specialists, Inc.*
  588 So.2d 175 (La.App.5th Cir. 1991) ........................................................................ 10, 11
*Finch v. Brenda Raceway Corp.*
  22 Cal.App.4th 547 (1994) ................................................................................................ 13
*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*
  185 Cal.App.3d 1149 (1986) ............................................................................................. 15
*Friedman v. Merck & Co., Inc.*
  107 Cal. App. 4th 454 (2003) ......................................................................................... 7, 13
*Grieves v. Superior Court*
  157 Cal.App.3d 159 (1984) ......................................................................................... 14, 15
*Hammond v. City of Philadelphia*
  164 F. Supp. 2d 481 (E.D. Pa. 2001) ........................................................................... 11, 12
*Herbert v. Placid Ref. Co.*
  564 So. 2d 371 (La.Ct.App. 1990) .................................................................................... 12
*Jackson v. Johnson*
  5 Cal.App.4th 1350 (1992) ................................................................................................ 15
*Mission Petroleum Carriers, Inc. v. Solomon*
  106 S.W.3d 705 (2003) ...................................................................................................... 12
*Mock v. Michigan Millers Mut. Ins. Co.*
  4 Cal. App. 4th 306 (1992) ................................................................................................ 14
*Ney v. Axelrod*
  723 A.2d 719 (Pa. Super. 1999) ................................................................................... 11, 12
*Promubol v. Hackett*
  454 Pa. Super. 622 (1996) .................................................................................................. 11
*Roth v. Shell Oil Co.*
  185 Cal. App. 2d 676 (1960) ............................................................................................. 14
*Schumate v. Johnson Publishing Co.*
  139 Cal.App.2d 121 (1956) ............................................................................................... 14
*Shade Foods v. Innovative Product Sales*
  78 Cal.App.4th 847 (2000) ................................................................................................ 15
*Sharpe v. St. Luke's Hospital*
  573 Pa. 90 (Pa. 2003) ........................................................................................................... 9
*Smith v. Superior Court*
  10 Cal.App.4th 1033 (1992) .............................................................................................. 13
*SmithKline Beecham Corp. v. Doe*
  903 W.2d 347 (Tex. 1995) ................................................................................................. 11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Stinson v. Physicians Immediate Care Ltd.*
   269 Ill.App.3d 659 (1995) ............................................................................................ 9, 10
*Taylor v. Superior Court*
   24 Cal.3d 890 (1979) ......................................................................................................... 14
*Tomko v. Marks*
   412 Pa.Super. 54 (1992) ..................................................................................................... 11
*Vargo v. National Exch. Carriers Ass'n, Inc.*
   376 N.J. Super. 364 (App.Div. 2005) ............................................................................... 12
*Yu v. Signet Bank/Virginia*
   69 Cal.App.4th 1377 (1999) ........................................................................................ 13, 15

**Statutes**
Civ. Code § 3294 .................................................................................................................. 14

**Other Authorities**
Prosser, Law of Torts
   (4th ed. 1971) § 2 ............................................................................................................... 14

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA  94111**

-iii-

MEMORANDUM OF POINTS & AUTHORITIES ISO
COMPASS VISION'S MOTION TO DISMISS                                              CASE NO. CV 07-05642 EDL