# Exhibit 1

**Exhibit 1**

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORIE GARLICK, TINA L. SCHROEDER, JOY SCOTT, BRYAN E. BLEDSOE, WENDY R. BRODY, KELLY BUCKLEY, G. GEOFFREY CRAIG, GAY CUMMINS, MARSHA DIENELT, BETH GIBSON, MICHELLE J. GILLUM, ROBIN M. GREEN, RICHARD P. PACZYNSKI, KRISTIE SMITH, JILL WELTON,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS, LABCORP, a Subsidiary of Laboratory Corporation of America Holdings, DTS a/k/a Drug Testing Systems, FIRST LAB, a Subsidiary of FHC Health Systems, Inc., COMPASS VISION, INC., FIRST ADVANTAGE Division of The First American Corporation and "JOHN DOE" CORPORATIONS,<br><br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 06-cv-6244(DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Quest Diagnostics, Inc.

("Quest")[1], Laboratory Corporation of America, a subsidiary of Laboratory Corporation of America Holdings ("LabCorp")[2], National Medical Services, Inc. d/b/a NMS Labs ("NMS Labs"), Drug Test Systems ("DTS"), Compass Vision, Inc. ("Compass"), First Advantage Occupational Health Services Corporation ("First Advantage")[3], First Hospital Laboratories, Inc., a subsidiary of FHC Health Systems, Inc. ("FirstLab")[4] (collectively "Defendants") to dismiss Class Plaintiffs Lorie Garlick, Tina L. Schroeder, Joy Scott, Bryan E. Bledsoe, Wendy R. Brody, Kelly Buckley, G. Geoffrey Craig, Gay Cummins, Marsha A. Dienelt, Beth Gibson, Michele Green, Richard P. Paczynski, Kristi Smith and Jill Welton's (collectively "Class Plaintiffs") Complaint with prejudice pursuant to FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 9(b). Defendants First Advantage, FirstLab and Compass (collectively "TPA Defendants"[5]) separately filed a brief to dismiss Count VI of Class Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6) as Count VI pertains to TPA Defendants only. In their opposition, Plaintiffs state that they have determined to go forward against all Defendants pursuant to Count V of their Complaint, alleging negligence and against TPA

---

[1] The proper party name is LabOne, Inc., a Missouri Corporation, d/b/a Quest Diagnostics, but for purposes of this Opinion will be referred to in this Opinion as "Quest" to remain consistent with the parties' moving papers.

[2] This party was incorrectly named "LabCorp, a subsidiary of Laboratory Corporation of America Holdings", but will be referred to in this Opinion as "LabCorp" to remain consistent with the parties' moving papers.

[3] This party was incorrectly named "First Advantage, a Division of the First American Corporation", but will be referred to in this Opinion as "First Advantage" to remain consistent with the parties' moving papers.

[4] This party was incorrectly named "FirstLab, a subsidiary of FHC Heath Systems, Inc.", but will be referred to in this Opinion as "FirstLab" to remain consistent with the parties' moving papers.

[5] Third-Party Administrators.

2

Defendants on the Breach of Fiduciary Claim in Count VI of their Complaint. All other claims in Plaintiffs' Complaint are withdrawn.

Defendants filed a reply to Class Plaintiffs' Opposition to which Class Plaintiffs filed a sur-reply. Thereafter, Defendants filed a motion to strike Class Plaintiffs' sur-reply pursuant to L.CIV.R.7.1.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the parties' submissions, and based upon the following, it is the finding of this Court that Defendants' motion to dismiss Plaintiffs' Complaint with prejudice pursuant to FED. R. CIV. P. 12(b)(6) is **granted** in its entirety.

Further, Defendants' motion to strike Plaintiffs' sur-reply pursuant to FED. R. CIV. P. 7.1 is **granted**. "No sur-replies are permitted without permission of the Judge of Magistrate Judge to whom the case is assigned." L.Civ.R. 7.1(d)(6).

I.   **BACKGROUND**

Plaintiffs are a class of current or former licensed health care professionals and former alcohol abusers. The named Class Plaintiffs are licensed to practice in several states including California, Kansas, Pennsylvania, Texas and Oklahoma (Complaint ¶¶ 3-8) and claim they were required by their state licensing boards to abstain from consuming alcoholic beverages as part of their respective recovery plans to remain certified by their respective state medical boards. To monitor their consumption of alcohol, the state licensing boards required Class Plaintiffs to submit to Ethyglucuronide, or "EtG" testing. EtG is a metabolite of alcohol, and is supposed to provide proof of alcohol consumption as much as five days after consuming an alcoholic beverage.

(Complaint ¶35). Plaintiffs allege that a variety of factors, including ordinary products in the environment such as Purrell hand sanitizer, and other factors such as age, sex and certain medical conditions may contribute to positive EtG results, without the tested person having consumed alcohol. (Complaint ¶¶47-8).

The licensing boards monitored Class Plaintiffs' alcohol consumption by contracting with TPA Defendants to collect urine samples for EtG analysis by testing labs. TPA Defendants provided the services of Medical Review Officers ("MRO") in alcohol and drug screening programs in The United States. The TPA Defendants reported to the licensing boards and interpreted the results of EtG tests upon Class Plaintiffs. (Complaint ¶17). Defendants Quest, LabCorp, DTS and NMS Labs allegedly performed EtG testing on Class Plaintiffs, from which the TPA Defendants collected the results. Each Class Plaintiff was allegedly tested by either Quest, LabCorp, DTS or NMS Labs and each Class Plaintiff tested positive for EtG and each Class Plaintiff claims that they had not consumed alcohol. (Complaint ¶20).

Class Plaintiffs allege that Defendants, by promoting, advertising, marketing, selling, contracting with licensing boards and professional associations, collecting the urine samples, and utilizing the EtG test to establish that the individual consumed an alcoholic beverage, created a duty to use a reasonable degree of care to avoid erroneous test results. (Complaint ¶89).

Class Plaintiffs allege that TPA Defendants breached a fiduciary duty to them by accepting payment of fees to serve as MROs; the MROs were to make an independent informed investigation on behalf of the positive EtG testing Plaintiffs. Class Plaintiffs allege that TPA Defendants, through their MROs, were sophisticated intermediaries, purportedly acting in the dual capacity of protecting patients from health care professionals practicing under the influence of alcohol and insuring that

4

said professionals are not wrongly disciplined when they deny consumption of alcoholic beverages. (Complaint ¶104).

## II. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atlantic Corporation v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Pursuant to FED. R. CIV. P. 12(b)(6), relief cannot be granted against Defendants because Plaintiffs' Complaint does not raise a right to the relief sought against them for negligence. Defendants' motion to dismiss Count V of the Complaint is **granted**. Plaintiffs' Complaint also fails to raise a right to relief against TPA Defendants for breach of fiduciary duty in Count VI of the Complaint. TPA Defendants' motion to dismiss Count VI of the Complaint is **granted**.

### III. DISCUSSION

#### A. Choice of Law

As a federal district court sitting in diversity, this Court must apply the choice of law rules of New Jersey, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). New Jersey's choice of law rules mandate that the determinative law is that of the state with the greatest interest in governing the particular issue. The first step is to determine whether a conflict exists between the law of interested states, and then any conflict shall be determined on an issue-by-issue basis. Next, the Court must identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation. If the state's law is not related to its contacts with the litigation, then the state does not have an interest in having its law applied to the underlying issue. See Vezey v. Doremus, 510 A.2d 1187, 1189 (N.J.1986). Where no actual conflict of law exists, no choice of law need be made. See IBM Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004); Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 333 (D.N.J. 2005). In that instance, a motion to dismiss under FED. R. CIV. P. 12(b)(6) should be decided under New Jersey law. See Gallerstein v. Berkshire Life Ins. Co. of America, Civ. No.: 05-5661 (JAG), 2006 WL 2594862, *3 (D.N.J. Sept. 11, 2006).

In this case, Plaintiffs have little or no connection to the State of New Jersey, so this Court will apply the law of the Plaintiffs' home states because they have a greater interest in the outcome of their claims to the extent that a conflict with New Jersey law exists.[6] As to an issue-by-issue analysis, there are two issues to be decided in the present motion, negligence against all Defendants

---

[6] All parties agree that each Plaintiff's home state's laws should apply to their respective claims to the extent there is a conflict with New Jersey law. See Defendants' Brief, p. 9 and Plaintiffs' Opposition, p. 8.

and breach of fiduciary duty against TPA Defendants.

B. **Negligence Claims against Defendants Quest, LabCorp, DTS and NMS Labs**

New Jersey law and the state laws potentially governing Plaintiffs' claims require Plaintiffs to plead three elements in support of a negligence claim: 1- a duty owed to Plaintiff by Defendant; 2- a breach of that duty; and 3- an injury to Plaintiff resulting from Defendant's breach. See Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 280 (Pa. 2005); Siddons v. Cook, 382 N.J. Super. 1 (App. Div. 2005); Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004); Williamson v. City of Hays, 64 P.3d 364, 372 (Kan. 2003); Artiglio v. Corning Inc., 957 P.2d 313, 1318 (Cal. 1998); Krokowski v. Henderson Nat'l Corp., 917 P.2d 8, 11 (Okla. 1996); Greater Houstin Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).

There is no conflict of law analysis necessary to determine whether Plaintiffs state a claim upon which relief can be granted in claims against Quest, LabCorp, DTS or NMS Labs as the standards for establishing a negligence claim are the same across states. Some of the interested states[7] mandate that a testing laboratory owes a duty to the testing individual to collect and handle specimens with a duty of care to those individuals whose specimen they test. See Sharpe v. St. Luke's Hospital, 573 Pa. 90, 821 A.2d 1215 (2003); Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, 1134 (9th Cir. 2003). Further, Pennsylvania has mandated that the testing laboratories need to uphold a standard of reasonable conduct to prevent an undue risk of harm from false positive test results. See Sharpe v. St. Luke's Hospital, 573 Pa. 90, 821 A.2d 1215, 1218 (2003). Even with this heightened duty of care imposed by Pennsylvania, the allegations in Class Plaintiffs' Complaint do not allege that the testing facilities handled the specimens improperly, or that the tests were

---

[7]Pennsylvania and California.

7

improperly performed, or that the tests conducted did not show the presence of EtG. Defendants Quest, NMS, LabCorp and DTS performed the EtG tests, which Class Plaintiffs' state boards ordered them to submit. (Complaint ¶44). Nothing in the Complaint alleges that Defendants Quest, NMS, LabCorp or DTS breached the duty of care owed to Class Plaintiffs by reporting erroneous results of the EtG tests. Class Plaintiffs concede that EtG was found in their urine tests. (Complaint ¶60). Additionally, Defendants did not breach even ah eightened duty of care by reporting same.

Nothing in Class Plaintiffs' Complaint alleges Defendants Quest, LabCorp, DTS or NMS performed the EtG tests in a negligent manner, nor is there any other specific allegation to hold these Defendants liable for Plaintiffs' alleged damages, as these laboratories only had the responsibility to administer the EtG test with reasonable care, and nothing in the Complaint alleges that these Defendants failed to do so, or did so negligently. As such, Defendants' motion to dismiss is **granted**.

### C. Negligence Claims against TPA Defendants

As mentioned above, New Jersey law and the state laws potentially governing Plaintiffs' claims require Plaintiffs to plead three elements in support of a negligence claim: 1- a duty owed to Plaintiff by Defendant; 2- a breach of that duty; and 3- an injury to Plaintiff resulting from Defendant's breach. See Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 280 (Pa. 2005); Siddons v. Cook, 382 N.J. Super. 1 (App. Div. 2005); Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004); Williamson v. City of Hays, 64 P.3d 364, 372 (Kan. 2003); Artiglio v. Corning Inc., 957 P.2d 313, 1318 (Cal. 1998); Krokowski v. Henderson Nat'l Corp., 917 P.2d 8, 11 (Okla. 1996); Greater Houstin Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Therefore, as above, there is no need to enter into a choice of law analysis because there is no conflict with New Jersey law,

the forum state and as a result, New Jersey negligence principles will apply to Count V of Class Plaintiffs' Complaint against TPA Defendants.[8]

Class Plaintiffs allege that TPA Defendants acted as third-party administrators with respect to the EtG testing for the state licensing boards and that as part of their duties, collected urine samples from the testing lab Defendants, interpreted and reported the results of the EtG tests to the licensing boards. (Complaint ¶¶17, 42-44). As a result of Class Plaintiffs testing positive, they claim that they were either disciplined or threatened with discipline by their state licensing boards who required them to submit to the EtG test. (Complaint ¶62).

In opposition, Plaintiffs assert that the gravamen of their negligence claim as pled is that Defendants introduced a new test into the marketplace of employment drug testing, which was not capable of being used for the purpose for which it was introduced and promoted, and that TPA Defendants wrongly interpreted the faulty test.[9] As stated above, Defendants must have had a duty owed to Plaintiffs in order for a negligence claim to survive. Class Plaintiffs allege that Defendants, by promoting, advertising, marketing, selling, contracting with licensing boards and professional associations, collecting urine samples and utilizing the EtG test to allegedly establish that the tested individual consumed an alcoholic beverage, created a duty to use a reasonable degree of care to avoid erroneous test results. (Complaint ¶89). Plaintiffs do not assert that these alleged acts are accompanied by any duty owed to Plaintiffs.

TPA Defendants did not breach their duty to use reasonable care when they administered the test results, because the Plaintiffs' urine contained EtG, which is what these administrators were

---

[8] FirstLab, Compass and First Advantage.

[9] Class Plaintiffs' Opposition to Defendants' motion to dismiss, pp. 9-10.

9

testing for. The only case law cited by Plaintiffs on the issue of duty extends to laboratories and hospitals regarding the collection and handling of urine specimens for employment-related drug testing. See Sharpe v. St Luke's Hospital, 573 Pa. 90, 821 A.2d 1215 (2003). TPA Defendants are not alleged to have handled or collected the specimen in a negligent manner, nor are TPA Defendants alleged to have decided which tests to be performed upon Plaintiffs, nor what levels of EtG would be used to constitute positive test results and are not alleged to have performed any testing. As such, Plaintiffs' negligence claims against TPA Defendants are dismissed as a matter of law.

**D.     Breach of Fiduciary Duty Claims against TPA Defendants**

Class Plaintiffs allege that TPA Defendants, through their MROs[10], have a fiduciary duty to Class Plaintiffs, who had voluntarily entered into agreements to undergo random drug and alcohol testing to insure that they had not resumed consuming alcohol. (Complaint ¶101). Plaintiffs further allege that TPA Defendants, through their MROs, owed Class Plaintiffs a fiduciary duty to discharge their contractual and professional responsibilities with due care, requisite skill and training and with the expertise necessary to render competent and reliable opinions to the licensing boards when their licensing privileges were at risk. Plaintiffs additionally allege that Defendant TPAs, also through their MROs, were sophisticated intermediaries, purportedly acting in the dual capacity of 1- protecting patients from health care professionals practicing under the influence of alcohol and 2- insuring that said professionals are not wrongly disciplined when they deny consumption of alcoholic beverages. (Complaint ¶¶103-4). Finally, Plaintiffs allege that it is TPA Defendants' responsibility, when positive EtG tests are rendered, to interview the health care professional and explore

---

[10]Defendant TPAs employed the services of physicians to act as Medical Review Officers ("MRO").

10

alternative causes for the positive test result, which Plaintiffs allege that TPA Defendants failed to do, resulting in a breach of their apparent fiduciary duty. (Complaint ¶¶106, 112).

Nowhere in Plaintiffs' Complaint is a fiduciary relationship alleged. As such, claims of a breach of fiduciary duty must likewise be dismissed. Plaintiffs allege that the position of an MRO in employment drug testing is one where the tested individual, who denies taking the drug for which the test was positive, places a special confidence in the medical review officer.[11] Simply alleging that a special confidence exists is insufficient.

The requirements for a fiduciary duty differ among the relevant jurisdictions. For instance, New Jersey, the forum state, requires that an agency relationship exist between plaintiff and defendant and that the defendant breached that duty imposed by the agency relationship. See Lankford v. Irby, 2006 U.S. Dist. LEXIS 70862, Civ. No. 04-2636, *21 (D.N.J. Sept. 29, 2006). To the extent that a Plaintiff's home state conflicts with New Jersey's agency relationship requirement, that Plaintiff's home state's law will control the issue of whether a fiduciary relationship existed between Plaintiffs and TPA Defendants.

In Texas, a fiduciary relationship prior to and apart from the transaction at issue between the parties is required to impose such a fiduciary duty upon a party in the present action. See In re Estate of Kuykendall, 206 S.W.3d 766, 771 (Tex. Ct. App. 2006). The mere fact that one subjectively trusts another does not, alone, indicate that confidence is placed in another in the sense of fiduciary duty. Id. at 771. Since Plaintiffs fail to allege that any relationship between them and the TPA Defendants prior to the subject alleged breach, under Texas law, no fiduciary relationship exists. Plaintiffs also fail to allege any special trust between them and TPA Defendants that would lead to

---

[11]Plaintiffs' Opposition to Defendants' motion to dismiss, p. 14.

11

a confidential relationship. As such, Class Plaintiff Bledsoe's claims against TPA Defendants for breach of a fiduciary relationship fail and must be dismissed.

In Kansas, a fiduciary relationship is characterized by a unique degree of trust and confidence between the parties, one of whom must have and exercise superior control or influence over the other, thus giving rise to a duty to act primarily on behalf of the other. See Denison State Bank v. Madeira, 640 P.2d 1235, 1241 (Kan.1982). There is nothing in Class Plaintiffs' Complaint which alleges a unique degree of trust, nor are there any allegations that TPA Defendants had superior control over Plaintiffs. In opposition, Class Plaintiffs make this argument, but with virtually no support.[12] As such, Class Plaintiff Gillum's claims against TPA Defendants for breach of fiduciary duty also fail and must be dismissed.

In Pennsylvania, a fiduciary relationship exists "when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." Com., Dept. of Transp. v. E-Z Parks Inc., 153 Pa. Comwlth. 258, 620 A.2d 712. A fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of any duty implied by law. Id. Clearly, TPA Defendants did not have such an overmastering dominance over Plaintiffs to which the highest standard of any duty imposed by law should be imposed in this case. Contrary to Plaintiffs' allegations that there was a direct contractual relationship between them and the MROs who were hired by the TPA Defendants, Plaintiffs allege in the Complaint that the MROs provided services pursuant to contracts between TPA Defendants and their respective state licensing boards.

---

[12]Class Plaintiffs' Opposition to Defendants' motion to dismiss, p. 14.

(Complaint ¶¶43,99). There was no contractual agreement between the MROs and Class Plaintiffs., nor did TPA Defendants have an overmastering dominance over Class Plaintiffs, as required by Pennsylvania law. As such, Plaintiffs Scott, Gibson and Paczynski's claims against TPA Defendants for breach of fiduciary duty are dismissed because there is no fiduciary relationship present under Pennsylvania law.

In California, a fiduciary duty can arise only if defendant voluntarily accepts the confidence purportedly reposed by plaintiff. 3250 Wilshire Blvd. Bldg. v. Metropolitan Life Ins. Co., 1991 U.S. App. LEXIS 10949, Civ. No. 90-55323, *4 (9th Cir. May 21, 1991). Clearly, TPA Defendants did not voluntarily accept the confidence that Plaintiffs allege they gave to TPA Defendants. As such, Plaintiffs Garlick, Brody, Dienelt, Green and Welton's claims against TPA Defendants for breach of a fiduciary duty are dismissed.

Finally, under Oklahoma law, a fiduciary relationship must be based on an agreement from which minds have met to create a mutual obligation. See. Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 729 (10th Cir. 1991). Here, there was no contract between TPA Defendants and Plaintiffs. There was no fiduciary relationship between Plaintiffs Craig Brody and Garlick[13], so their claims against TPA Defendants for a breach of a fiduciary duty are dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Class Plaintiffs' Complaint on the remaining Counts alleging negligence against all Defendants and breach of fiduciary duty against

---

[13]It is unclear from the Complaint which Plaintiffs reside and have licenses in Oklahoma, ¶4 of Plaintiffs' Complaint.

TPA Defendants is **granted** in its entirety. An appropriate Order accompanies this Opinion.

/s/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:  December 28, 2007
Orig:  Clerk's Office
cc:    Counsel of Record
       The Honorable Mark Falk, U.S.M.J.
       File