CHRISTIAN GREEN, State Bar No. 173502
LAW OFFICES OF SAMUEL G. GRADER
1860 Howe Avenue, Suite 350
Sacramento, CA 95825
Telephone: (916)567-6404
Direct Line: (916)567-6426
FAX: 866-903-4464

Attorney for Defendant
NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE AND TRACEY MOORE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COMPASS VISION, INC. AND NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS.<br><br>    Defendants. | Case No. 3:07cv5642 BZ<br><br>**NOTICE OF NATIONAL MEDICAL SERVICES, INC.'S  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br>[Fed. R Civ. P. 12(b)(6)]<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:   March 5, 2008<br>Time:   10:00 a.m.<br>Crtrm:  G, 15th Floor<br>Judge:  Bernard Zimmerman |

## TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON March 5, 2008 at 10:00 a.m. or soon

thereafter as the matter may be heard in Courtroom G, 15th Floor, of this Court located at

450 Golden Gate Avenue, San Francisco, California, Defendant NATIONAL

MEDICAL SERVICES, INC. d/b/a NMS LABS ("NMS Labs") will and hereby does

move this Court pursuant to Federal Rules of Civil Procedure, rule 12(b)(6) for an Order dismissing Plaintiff's Complaint with prejudice.

This Motion will be based upon this Notice and the Memorandum of Points and Authorities, all served and filed herewith, Request for Judicial Notice, the Opinion issued by the Hon Dennis M. Cavanaugh in the action entitled *Lorie Garlick, et al v. Quest Diagnostics, Inc.*, et al., civil Action No.: 06 cv 6244 pending in the United States District Court for the District of New Jersey, the opinion issued by the Hon. James Gardner Collins in the matter of *Luz M. Perez-Rocha, M.D. v. Commonwealth of PA,* Commonwealth of PA No.: 2225 CD 2006, and the pleadings, papers and records filed in this matter, and upon such other oral and documentary evidence as may be presented at the hearing of this Motion.

PLEASE TAKE FURTHER NOTICE that at the time and place aforesaid, Defendant will request that the proposed form of Order submitted herewith be entered by the Court.

DATED: January 29, 2008

LAW OFFICES OF SAMUEL G. GRADER

/S/ Christian Green

_____

Christian Green
Attorneys for Defendant

CHRISTIAN GREEN, State Bar No. 173502
LAW OFFICES OF SAMUEL G. GRADER
1860 Howe Avenue, Suite 350
Sacramento, CA 95825
Telephone: (916)567-6404
Direct Line: (916)567-6426
FAX: 866-903-4464

Attorney for Defendant
NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE AND TRACEY MOORE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COMPASS VISION, INC. AND NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS.<br><br>    Defendants. | Case No. 3:07cv5642 BZ<br><br>**MEMORANDUM OF POINTS AND AUTHORTIES REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NATIONAL MEDICAL SERVICES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>[Fed. R Civ. P. 12(b)(6)]<br><br>Date:    March 5, 2008<br>Time:    10:00 a.m.<br>Crtrm: G, 15th Floor<br>Judge:  Bernard Zimmerman |

## ORAL ARGUMENT REQUESTED

Case No.: 3:07cv5642

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

i

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................4

        A.    Plaintiffs' Allegations .................................................................................4

              1.    Plaintiffs are Healthcare Professionals With Admitted Drug
                    and/or Alcohol Addiction ..................................................................4

              2.    EtG Testing Was Reported by Medical Doctors as Proof of
                    Alcohol Consumption .......................................................................5

              3.    Role of California State Board of Nursing and State Board of
                    Pharmacy ...........................................................................................5

        B.    What Plaintiffs Do Not Allege....................................................................5

        C.    EtG Testing Has Been Upheld by the Courts as a Valid Testing
              Methodology ...............................................................................................6

IV.     LEGAL AUTHORITY ...........................................................................................7

        1.    NMS Lab's 12(b)(6) Motion is Appropriate here where Plaintiffs
              Fail to State a Viable Claim .........................................................................7

        2.    Plaintiffs Fail to Establish That NMS Labs Owed Them a Duty Or
              that NMS Labs Breached That Duty.............................................................7

        3.    Plaintiffs Cannot Recover Emotional Distress Damages for Solely
              Economic Loss............................................................................................12

        4.    Plaintiffs Cannot Recover Punitive Damages.............................................13

V.      CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

Page

**Cases**

*Beck v. State Fund Mut. Auto. Ins.*
54 Cal.App.3d 347 (1976)................................................................ 13
*Bily v. Arthur Young & Co.*
3 Cal. 4th 370 (1992)..................................................................... 7
*Caputo v. Compuchem Labs, Inc.*
1994 WL 100084 ....................................................................... 11, 12
*College Hosp. Inc. v. Superior Court*
8 Cal. 4th 704 (1994)................................................................... 14
*Cooper v. Laboratory Corp. of Am. Holdings, Inc.*
150 F.3d 376 (4th Cir. 1998).......................................................... 11
*Duncan v. Afton Inc.*
991 P.2d 739 (Wyo. 1999) .............................................................. 9
*Elia v. Erie Ins. Exchange*
398 Pa.Super. 4233 (1990) ............................................................ 10
*Finch v. Brenda Raceway Corp.*
22 Cal.App.4th 547 (1994)............................................................. 12
*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*
185 Cal.App.3d 1149 (1986)........................................................... 14
*Friedman v. Merck & Co., Inc.*
107 Cal. App. 4th 454 (2003)....................................................... 7, 12
*Grieves v. Superior Court*
157 Cal.App.3d 159 (1984)......................................................... 13, 15
*Hammond v. City of Philadelphia*
164 F. Supp. 2d 481 (E.D. Pa. 2001)................................................ 10
*Herbert v. Placid Ref. Co.*
564 So. 2d 371 (La.Ct.App. 1990) ................................................... 11
*Jackson v. Johnson*
5 Cal.App.4th 1350 (1992)............................................................. 15
*Mission Petroleum Carriers, Inc. v. Solomon*
106 S.W.3d 705 (2003) ............................................................. 10, 11
*Mock v. Michigan Millers Mut. Ins. Co.*
4 Cal. App. 4th 306 (1992)............................................................. 13
*Ney v. Axelrod*
723 A.2d 719 (Pa. Super. 1999) ................................................... 10, 11
*Promubol v. Hackett*
454 Pa. Super. 622 (1996) ............................................................ 10
*Roth v. Shell Oil Co.*
185 Cal. App. 2d 676 (1960).......................................................... 13
*Schumate v. Johnson Publishing Co.*
139 Cal.App.2d 121 (1956)........................................................... 13
*Shade Foods v. Innovative Product Sales*
78 Cal.App.4th 847 (2000)............................................................ 14
*Smith v. Superior Court*
10 Cal.App.4th 1033 (1992)........................................................... 12
*SmithKline Beecham Corp. v. Doe*
903 W.2d 347 (Tex. 1995) ......................................................... 9, 10
*Stinson v. Physicians Immediate Care Ltd.*
269 Ill.App.3d 659 (1995)........................................................... 8, 9
*Taylor v. Superior Court*
24 Cal.3d 890 (1979).................................................................. 13

# TABLE OF AUTHORITIES

Page

*Tomko v. Marks*
  412 Pa.Super. 54 (1992) ................................................................................. 10
*Vargo v. National Exch. Carriers Ass'n, Inc.*
  376 N.J. Super. 364 (App.Div. 2005) ......................................................... 11
*Yu v. Signet Bank/Virginia*
  69 Cal.App.4th 1377 (1999) ................................................................... 12, 15

**Statutes**
Civ. Code § 3294 ...................................................................................... 13, 14

**Other Authorities**
Prosser, Law of Torts
  (4th ed. 1971) § 2 ............................................................................................ 14

CHRISTIAN GREEN, State Bar No. 173502
LAW OFFICES OF SAMUEL G. GRADER
1860 Howe Avenue, Suite 350
Sacramento, CA 95825
Telephone: (916)567-6404
Direct Line: (916)567-6426
FAX: 866-903-4464

Attorney for Defendant
NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE AND TRACEY MOORE,<br><br>Plaintiffs,<br><br>vs.<br><br>COMPASS VISION, INC. AND NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS.<br><br>Defendants. | Case No. CV 07 5642 BZ<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NATIONAL MEDICAL SERVICES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[Fed. R Civ. P. 12(b)(6)]**<br><br>Date: March 5, 2008<br>Time: 10:00 a.m.<br>Crtrm: G, 15th Floor<br>Judge: Bernard Zimmerman |

Pursuant to Federal Rule of Civil Procedure 12 (b)(6), Defendant National Medical Services, Inc. (NMS Labs) respectfully submits the following Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted.

### INTRODUCTION

Plaintiffs are nurses and pharmacists who, because of admitted drug and/or alcohol addiction, were required by either the California State Board of Nursing or the State

-1-

Board of Pharmacy, as part of their recovery programs, to submit to random drug and alcohol testing. As Plaintiffs concede in their Complaint, random screening is not a requirement for registered nurses and pharmacist unless they have an admitted history of addiction.

The testing methodology selected by the State Boards to which Plaintiffs were required to submit is known as "EtG" testing. The EtG test is a biomarker test that detects the presence of ethyl glucuronide, a metabolite of ethanol (alcohol) in urine samples.

In a novel theory, Plaintiffs assert in their Complaint that Defendant NMS Labs is somehow responsible for accurately reporting the Plaintiffs EtG levels in urine samples that were submitted to them while the plaintiffs were participating in their recovery program. There is no contention made that NMS Labs failed to properly handle, test or report the EtG levels of these various plaintiffs. It is alleged that the reported results of these tests factored into the resultant action taken by the State Boards, including plaintiffs' suspension from their jobs.

There is no legal precedent in California, or any other jurisdiction, which supports this novel theory of liability against NMS Labs. With respect to the five counts of negligence alleged, there are not any facts alleging that NMS Labs owed Plaintiffs a duty of care. Without a duty, NMS Labs cannot, as a matter of law, be negligent.

The reason for Plaintiffs' failure to plead facts demonstrating a duty of care can be surmised from the numerous concessions included in Plaintiffs' Complaint, including their concession that: (1) the State of California, not NMS Labs, decided to institute EtG testing for healthcare professionals participating in drug and alcohol testing programs, (2) Plaintiffs' respective State Boards, not NMS Labs, required Plaintiffs to submit to EtG testing as a condition of employment following their admission of drug or alcohol addiction, (3) the State Boards administer the licensing privileges of registered nurses and

pharmacists, (4) NMS did not inaccurately report the EtG levels in plaintiffs' urine, (5) the State Boards, not NMS Labs, decided what action to take in response to Plaintiffs' positive test results.

Significantly, unlike a handful of cases in other jurisdictions in which Plaintiffs have alleged negligent collection, handling or testing of their samples, and in which the courts have found a duty on the testing laboratory to handle Plaintiff employees' samples with reasonable care, **Plaintiffs in this matter do not allege that NMS Labs negligently collected, handled or tested their respective urine samples in which EtG was detected.** Rather, the gravamen of Plaintiffs' negligence claim is that Defendants, "by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results." Such allegation does not state a cognizable claim for negligence.

Regardless of how plaintiffs characterize their negligence claim, it fails as a matter of law because the only duties, if any, that a laboratory could owe to an individual tested for employment purposes are fulfilled if the laboratory properly collects and handles the employee's specimen and accurately reports the chemical tests requested by the employer. Plaintiffs do not contend that this defendant laboratory breached that duty.

Plaintiffs' claims are nearly identical to those advanced by Plaintiffs in the action *Garlick v. Quest Diagnostics, Inc.*, et. al., pending in the United States District Court for the District of New Jersey, Case No. 06-cv-6244. On December 28, 2007 the Hon. Dennis M. Cavanaugh issued an Opinion in that action, **dismissing** Plaintiffs' Complaint against defendant testing laboratories and third party administrators pursuant to Fed. R.Civ.P. 12(b)(6) on the basis that Plaintiffs' Complaint did not raise a right to the relief

sought against defendants for negligence. [1]  (See Opinion, attached as Exhibit 1 to NMS Labs' Request for Judicial Notice, filed concurrently herewith.)    Judge Cavanaugh commented that while there is authority in some jurisdictions that a testing laboratory owes a duty to the testing individual to collect and handle specimens with a duty of care to those individuals whose specimens they test, unlike these cases the allegations in the *Garlick* Plaintiffs' Complaint do not allege that the testing lab or third party administrator handled the specimens improperly, or that the tests were improperly performed, or that the tests conducted did not show the presence of EtG.  As such, the cases were not controlling.    Significantly, while some jurisdictions recognize this limited duty to accurately handle, test and report laboratory findings, California has not extended this duty to laboratories handling samples for employment purposes.  The Complaint must therefore be dismissed because NMS Labs owes no duty to any of these plaintiffs.

## FACTUAL BACKGROUND

### *Plaintiffs' Allegations*

#### Plaintiffs are Healthcare Professionals With Admitted Drug and/or Alcohol Addiction

Plaintiffs, each of whom is either a licensed nurse or pharmacist, admitted to alcohol or drug addiction.  (Complaint at ¶¶ 38, 58, 74, 93 and 109.)    California registered nurses and pharmacists, who have an admitted history of addiction, are allowed to enter into a Diversion Program Recovery Contracts with Maximus, which serves as the administrator of the Program.  (Complaint at ¶¶ 8 and 15.)  Random drug screening is not a requirement for registered nurses and pharmacists in California, unless they have an admitted history of addiction, and have voluntarily entered into an agreement as part of

---

[1]      Judge Cavanaugh expressly noted in connection with the Plaintiffs' negligence claim, "[T]here is no conflict of law analysis necessary to determine whether Plaintiffs state a claim upon which relief can be granted . . . as the standards for establishing a negligence claim are the same across states. (See *Garlick* Opinion, page 7, Paragraph B and Page 8, Paragraph C.)  At least one of these plaintiffs was a California resident.

-4-

continued employment or are placed on probation. (Complaint at ¶ 16.) Each Plaintiff tested positive for EtG (most of them multiple times) while participating in their respective Recovery Programs. (Complaint at ¶¶ 44, 62, 63, 78, 79, 97, 98, 113..

### EtG Testing Was Reported by Medical Doctors as Proof of Alcohol Consumption

EtG was reported by Gregory Skipper, M.D. and Friedrich Wurst, M.D., in November 2002 at an international meeting of the American Medical Society, to provide proof of alcohol consumption as much as 5 days after drinking an alcoholic beverage. (Complaint at ¶ 17.) In 2003, because of the reports by Doctors Skipper and Wurst and "other reportedly remarkable results (e.g., positive findings, confirmed by admissions by the tested individuals, after traditional urine tests had registered negative), EtG testing began in the United States." (Complaint at ¶18.)

### Role of California State Board of Nursing and State Board of Pharmacy

The State of California instituted EtG testing. (Complaint at ¶ 23.) The State Boards of Nursing and Pharmacy, through Maximus, became a signatory to a service contract with Compass as its TPA and NMS as a testing lab facility for EtG testing programs. (Complaint at ¶ 23.) The California State Boards of Nursing and Pharmacy "administer, inter alia, the licensing privileges of registered nurses and pharmacists." (Complaint at ¶ 13.)

### *What Plaintiffs Do Not Allege*

Equally important as what Plaintiffs allege in their Complaint, if not more so, is what Plaintiffs do not allege. Specifically, Plaintiffs do **not** allege that:

- NMS Labs is responsible for instituting EtG testing in California. (Rather, as set forth above, Plaintiffs aver that the it was the State of California that was responsible for the same.)

- NMS Labs is responsible for the decision to have nurses and pharmacists participating in the California State Boards of Nursing and Pharmacy

Recovery Programs submit to EtG testing as a way to monitor the participants drug and/or alcohol use.

- NMS Labs is responsible for administering the licensing privileges of registered nurses or pharmacists. (Rather, Plaintiffs plead that the respective Boards are responsible for doing so.)

- Plaintiffs are known to NMS Labs or have any fiduciary relationship with NMS Labs;

- Plaintiffs paid any money to NMS Labs for any services;

- NMS Labs was negligent in the collection of any of Plaintiffs' samples;

- NMS Labs  was negligent in the handling of any of Plaintiffs' samples;

- NMS Labs was negligent in the testing of any of Plaintiffs' samples.

Moreover, Plaintiffs do **not** allege that their respective urine samples were not actually positive for EtG.    Even more significantly, while Plaintiffs assert that "Defendants, by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results" (Complaint  at ¶ 32) *none* **of the Counts alleged by the respective Plaintiffs alleges that NMS Labs owed Plaintiffs a duty.**  In fact, conspicuously missing from each of the six counts alleged on behalf of Plaintiffs is the word "duty" or the allegation that NMS Labs breached any duty owed to Plaintiffs.

### *EtG Testing Has Been Upheld by the Courts as a Valid Testing Methodology*

Ethyl glucuronide (EtG) is a unique metabolite formed through metabolism of ethanol.  To be confirmed positive, the metabolite concentration must be equal to or greater than the established confirmation cutoffs. EtG is produced within the body only when alcohol is present.

EtG testing has been upheld by the courts as a valid testing methodology. (See Opinion by the Hon. James Gardner Colins in the matter *Luz M. Perez-Rocha, M.D. v. Commonwealth of Pennsylvania*, et. al., attached as Exhibit 2 to Compass Vision's Request for Judicial Notice.) In upholding the suspension of the license to practice medicine in the *Perez-Rocha* matter, Judge Colins cited to the Licensing Board's Adjudication and Order in that matter that "[M]any studies support EtG testing as an appropriate and reliable means for indicating the presence of alcohol in the subject's system." (See Exhibit 2 to Request for Judicial Notice, page. 5.)

## LEGAL AUTHORITY

### 1.     NMS LAB'S 12(b)(6) MOTION IS APPROPRIATE HERE WHERE PLAINTIFFS FAIL TO STATE A VIABLE CLAIM

Rule 12 (b)(6) of the Federal Rules of Civil Procedure provides a mechanism for disposing of legally insufficient claims. This Rule provides that a motion to dismiss is proper where a pleading fails to state a claim upon which relief can be granted.

### 2.     PLAINTIFFS FAIL TO ESTABLISH THAT NMS LABS OWED THEM A DUTY OR THAT NMS LABS BREACHED THAT DUTY

Plaintiffs' purported claim for negligence against NMS Labs does not state a cognizable claim for relief under any theory of law. It is hornbook law that in order to state a claim for negligence, Plaintiffs must demonstrate duty, breach of duty, legal causation and damages. *Friedman v. Merck & Co., Inc.* 107 Cal. App. 4th 454, 463 (2003). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v. Arthur Young & Co.* 3 Cal. 4th 370, 397 (1992).

Preliminarily, Plaintiffs' broad, conclusory allegations that NMS Labs was negligent in connection with "marketing," "promoting," "publishing" and "falsely asserting" certain information are wholly irrelevant since Plaintiffs' Complaint nowhere

-7-

alleges causes of action for either negligent or intentional misrepresentation. Even is Plaintiffs had pled such claims, they would clearly fail since Plaintiffs' Complaint nowhere alleges that they were the recipients of any of the purportedly disseminated information. Absent any allegation of justifiable reliance, by the plaintiffs themselves, on these allegedly false representations, plaintiffs' plead cause of action is legally insufficient.

While there is authority in some jurisdictions that a testing laboratory owes a duty to the testing individual to collect and handle specimens with reasonable care, unlike those cases, the allegations in Plaintiffs' Complaint do not allege that Defendant NMS Labs handled their specimens improperly, that the tests were improperly performed, or that the tests conducted did not show the presence of EtG. Indeed Plaintiffs concede that EtG was found in their urine tests. Accordingly, NMS Labs could not have breached its duty to use reasonable care when it reported EtG levels which plaintiffs do not dispute.

In *Stinson v. Physicians Immediate Care Ltd.*, 269 Ill.App.3d 659 (1995) claims were brought against a **drug testing laboratory** for **negligent testing and negligent reporting.** In *Stinson*, plaintiff alleged that defendant laboratory was responsible for: (1) collecting Plaintiff's sample, (2) performing the drug testing, and (3) reporting the results of Plaintiff's tests to his employer. Plaintiff in that action alleged numerous negligent acts in the collecting and handling of his specimen by the testing laboratory, including claims that the lab: (1) failed to instruct its employees of the danger of specimen contamination; (2) failed to use specimen containers with sealable and tamper-evident lids; (3) failed to seal the specimen containers; (4) failed to obtain the plaintiff's initials or otherwise identify the specimen as belonging to the plaintiff; (5) conducted the drug-screening test so that the results were not accurate and were in error; (6) erroneously tested and reported that the plaintiff had cocaine in his body and (7) failed to use routinely followed precautionary procedures and otherwise conducted the drug-screening

test so that the results erroneously diagnosed cocaine in his body. (*Stinson* at p. 661.)
The plaintiff in *Stinson* further alleged that the lab falsely reported the results to his
employer. (*Id.* at p. 660.)

The court in *Stinson* found the existence of a duty based upon the "close
relationship" between a plaintiff and defendant if it is reasonably foreseeable that the
plaintiff will be harmed "if the defendant negligently reports the results to the employer."
(*Stinson* at p. 664.) The court further commented, "[T]he **drug-testing laboratory** is in
the best position to guard against the injury, **as it is solely responsible for the
performance of the testing and the quality control procedures**." (*Ibid.*, emphasis
added.)    That the *Stinson's* court's ruling was expressly limited to drug-testing
laboratories cannot be disputed given the court's holding that "[W]e therefore hold that a
**drug-testing laboratory** owes a duty of reasonable care to persons **whose specimens it
tests** for employers or prospective employers." (*Stinson* at p. 665.)

Similarly, *Duncan v. Afton Inc.*, 991 P.2d 739 (Wyo. 1999) involved **alleged
improper collection and handling** of a urine specimen. Plaintiff in that action claimed
that the temperature of his specimen had been incorrectly noted and, further, that his
specimen had remained unsealed for a period of time, allowing for contamination. The
court in *Duncan* ruled that **the collection company** owed a duty of care to the employee
when **collecting**, **handling**, and **processing** plaintiff's urine specimen for the purpose of
performing substance abuse testing. (*Duncan* at p. 740.)

In addition to the fact that none of the above decisions are analogous to the issues
presented by Plaintiffs' Complaint in this matter, it should be noted that a number of
jurisdictions disagree in the first instance that a testing laboratory owes a duty of care to
the individuals tested. In the Texas Supreme Court's decision in *SmithKline Beecham*

*Corp. v. Doe,* 903 W.2d 347 (Tex. 1995) the court held that a laboratory conducting drug testing under a contract with an employer has no relationship with, and thus, no duty to a prospective employee. (*SmithKline* at p. 356.)

In *Hammond v. City of Philadelphia,* 164 F. Supp. 2d 481, 483 (E.D. Pa. 2001), a police officer terminated from employment as a result of alleged drug use brought a claim against the drug testing company for negligence. Plaintiff asserted that defendant drug-testing company owed him a duty of care to: (1) properly maintain control of his urine sample to prevent tampering and contamination; (2) properly maintain testing devices for accurate testing; and (3) ensure that the tests were performed accurately. The court in *Hammond* held that, for negligence purposes, "[A] drug laboratory owes no duty of care to a customer's employee when it performs drug screening tests on the employee on behalf of the customer." (*Hammond* at p. 483, citing *Ney v. Axelrod,* 723 A.2d 719, 722 (Pa. Super. 1999); *Promubol v. Hackett,* 454 Pa. Super. 622, 686 (1996); *Tomko v. Marks,* 412 Pa.Super. 54 (1992); and *Elia v. Erie Ins. Exchange,* 398 Pa.Super. 4233 (1990).) The *Hammond* court explained its rationale for its ruling as follows:

> Drugscan tested plaintiff's urine on behalf of the Department. There are no allegations of any other relationship between Drugscan and Plaintiff. Drugscan owed no duty of care to plaintiff. In the absence of a duty of care, plaintiff cannot make out a negligence claim against Drugscan. (*Ibid.*)

Accordingly, the *Hammond* court dismissed the plaintiff's Complaint for failure to state a claim upon which relief could be granted. (*Hammond* at p. 484.)

In *Mission Petroleum Carriers, Inc. v. Solomon,* 106 S.W.3d 705 (2003) a truck driver who was terminated for failing a random drug test brought a negligence action against his former employer, alleging the employer failed to use ordinary care in collecting his urine specimen for testing. On the employer's Petition for Review, the Texas Supreme Court held that employers who conduct in-house urine specimen

collection under Department of Transportation regulations for random drug-testing of employees owe no duty of care to employees to conduct the drug test with reasonable care. (*Mission* at pp. 711-712.)

Two other cases which in which the courts have found no duty include *Herbert v. Placid Ref. Co.,* 564 So. 2d 371, 374 (La.Ct.App. 1990) [holding that a drug testing laboratory owes no duty of care to test subjects because its relationship is with the employer, not the employee] and *Ney v. Axelrod,* 723 A.2d 719, 722 (Pa.Super.Ct. 1999) [Holding that a drug retesting laboratory did not owe a prospective employee a duty of care].) In *Ney,* the court held ". . . we are not willing to create a theory of liability for negligent doctors or medical laboratories that have contracted with third parties for employment-related testing. Such causes of action do not identify a substantial harm to an identifiable and readily discernable class of plaintiffs such that we feel compelled to create liability based on a public policy rationale." (*Ney* at p. 722.)

Those courts which have addressed similar claims asserted by Plaintiffs in the instant matter, i.e., that a positive drug or alcohol test result was caused by a source other than the use of drugs or alcohol, have dismissed the claims, finding no legal owed by the testing laboratory to the person tested. See *Caputo v. Compuchem Labs, Inc.*, 1994 WL 100084, aff'd 37 F.3d 1485 (3rd Cir. 1994); *Cooper v. Laboratory Corp. of Am. Holdings, Inc.* 150 F.3d 376 (4th Cir. 1998) (no duty to warn that fermentation of glucose in urine specimen may cause positive alcohol result; *Vargo v. National Exch. Carriers Ass'n, Inc.* 376 N.J. Super. 364, 380-82 (App.Div. 2005) (holding that a laboratory owes no duty to warn of potential alternate causes of positive drug test results.)

*Caputo, supra,* appears to be the only reported case involving an allegation by the plaintiff that the test cut-offs were too low. In that case, the court found that defendant testing laboratory owed no duty to plaintiff in connection with this allegation. In response to the plaintiff's argument that defendant chose too low a number for the

baseline, positive screening cut-off, the court commented, "[C]onspicuously absent from plaintiff's argument, however, is any basis for imposing such a broad duty upon the defendant." Similarly absent from Plaintiffs' Complaint in the instant matter is any basis for imposing such a broad duty on NMS Labs. Thus, the same reasoning applied by the court in *Caputo* in arriving at its determination that defendant did not owe any duty of care is equally applicable to Plaintiffs' negligence claim against NMS Labs.[2]

### 3. PLAINTIFFS CANNOT RECOVER EMOTIONAL DISTRESS DAMAGES FOR SOLELY ECONOMIC LOSS

In connection with their negligence claim against NMS Labs, Plaintiffs assert that they are entitled to recover damages for emotional distress. (Complaint at ¶ ¶ 54, 69, 88, 104 and 120.) Plaintiffs, however, are barred as a matter of law from recovering emotional distress damages in that they have not plead that they suffered any physical injury. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 485 (2003). In *Yu v. Signet Bank/Virginia*, 69 Cal.App.4th 1377, 1397 (1999) the court instructed, "[I]n general, a plaintiff incurring neither physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, is entitled neither to punitive damages nor to a recovery for emotional distress." See also *Finch v. Brenda Raceway Corp.*, 22 Cal.App.4th 547, 554 (1994) (emotional distress damages are not recoverable when a negligent misrepresentation causes only economic injury); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1040 (1992)(mere negligence will not support a recovery for mental suffering where the defendant's tortious conduct has resulted in only economic injury to the plaintiff). Based on this authority, Plaintiffs' claim for recovery of damages for

---

[2]    The court in *Caputo* addressed the concerns raised by the Plaintiff therein regarding the use of and potential misuse of drug testing in the employment arena. The court, however, instructed, "The fact that there are reasons to be concerned does not justify imposing unprecedented duties upon a laboratory with the sole function of analyzing and returning a report."

emotional distress in connection with their negligence claim against NMS Labs is properly dismissed.

### 4.    PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES

Under the weight of California law, Plaintiffs' claim for punitive damages is also subject to dismissal since their Complaint fails to state facts sufficient to establish a right to recover such damages against NMS Labs.

Punitive damages are awarded as a form of public punishment to deter evil intent and actions.  Such damages are never awarded as a matter of right. *Schumate v. Johnson Publishing Co.,* 139 Cal.App.2d 121, 135 (1956).   Punitive damages are generally disfavored under California law. *Beck v. State Fund Mut. Auto. Ins.*, 54 Cal.App.3d 347, 355 (1976).  The mere allegation an intentional tort was committed is not sufficient to warrant an award of punitive damages. *Grieves v. Superior Court*, 157 Cal.App.3d 159, 166 (1984); *Taylor v. Superior Court* 24 Cal.3d 890, 894 (1979) citing Prosser, Law of Torts (4th ed. 1971) § 2, at pp. 9-10.

"There must be circumstances of aggravation or outrage, such as spite or malice or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton. . . ." *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992.) Moreover, "[A]n award of exemplary damages cannot be based on mere speculation; **it depends instead on a definite showing of a willingness to vex, harass, to injure.** The wrongful personal intention to injure is the factor that calls forth the penalty of punitive damages." *Roth v. Shell Oil Co.*, 185 Cal. App. 2d 676, 682 (1960.)

In order to state a claim for punitive damages, plaintiff must allege *facts*, as opposed to mere conclusions, to demonstrate that Compass Vision was "guilty of oppression, fraud or malice."  (Cal. Civ. Code § 3294.)  Effective January 1, 1998,

section 3294 was amended to strengthen the statutory definitions of both "malice" and
"oppression" to require "despicable conduct" that causes "cruel and unjust hardship," and
to require proof of this culpable conduct by "clear and convincing" evidence. Civil Code
§ 3294 defines malice, oppression and fraud as follows:

(1)     'Malice' means conduct which is *intended by the defendant to
        cause injury* to the plaintiff or *despicable conduct* which is
        carried on by the defendant with a willful and conscious
        disregard of the rights and safety of others.

(2)     'Oppression' means *despicable conduct* that subjects a person
        to *cruel and unjust hardship* in conscious disregard of that
        person's rights.

(3)     'Fraud' means an intentional misrepresentation, deceit or
        concealment of a material fact known to the defendant with
        the *intention* on the part of the defendant of thereby *depriving
        a person of property or legal rights* or otherwise causing
        injury."

(Emphasis added.)

"The requirement of 'despicable' conduct represents a 'substantive limitation on
punitive damage awards. Used in its ordinary sense, the adjective 'despicable' is a
powerful term that refers to circumstances that are 'base, 'vile, or 'contemptible.*" Shade
Foods v. Innovative Product Sales* 78 Cal.App.4th 847, 891 (2000), quoting *College
Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 725 (1994). As stated in *Flyer's Body Shop
Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal.App.3d 1149, 1154 (1986):

The wrongdoer 'must act with the intent to vex, injure, or annoy, or
with a conscious disregard of the plaintiff's rights.' [Citations
omitted.] Punitive damages are appropriate if the defendant's acts are
reprehensible, fraudulent or in blatant violation of law or policy.
The mere carelessness or ignorance of the defendant does not justify
the imposition of punitive damages. Unhappily, as a society, we
must tolerate without added retribution these all too common lapses
in ourselves.

In *Yu v. Signet Bank, supra*, 1377, 1397, the court stated that, in general, a plaintiff incurring neither physical impact nor physical damage, and whose loss is solely economic, is not entitled to punitive damages. In *Jackson v. Johnson*, 5 Cal.App.4th 1350, 1354-1355, involving a claim for legal malpractice, the court held, "[S]imple negligence, no more, was alleged. Such allegation falls far short of the 'oppression, fraud, or malice' required by Civil Code section 2394." See also *Grieves v. Superior Court, supra*, 157 Cal.App.3rd at pp.166-168.

As in *Jackson*, Plaintiffs' Complaint is one for "simple negligence." The Complaint fails to plead any evil intent or motive on the part of NMS Labs. Further, Plaintiffs' damages are for economic harm and thus do not give rise to any entitlement to punitive damages. Permitting Plaintiffs in this instance to plead entitlement to such damages, therefore, would be contrary to California law.

## CONCLUSION

Plaintiffs' Complaint, which fails to allege any facts demonstrating the existence of a duty on the part of NMS Labs, and similarly fails to allege facts demonstrating the breach of any such duty, does not adequately set forth a viable cause of action against this defendant. Pursuant to Fed. R.Civ. P. 12(b)(6), therefore, this motion is properly granted and NMS Labs respectfully requests that Plaintiffs' Complaint be dismissed, in its entirety, with prejudice.

Respectfully submitted,

DATED: January 29, 2008

LAW OFFICES OF SAMUEL G. GRADER

/S/ Christian Green

Christian Green
Attorneys for Defendant