Norman Perlberger, Esquire        Attorney Pro Hac Vice for Plaintiffs
POMERANTZ PERLBERGER & LEWIS LLP
21 South 12th Street, 7th Floor
Philadelphia, PA 19107
(215)  569-8866
nperlberger@ppl-law.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE and TRACEY MOORE**<br>**Plaintiffs**<br><br>**vs.**<br><br>**COMPASS VISION, INC. and**<br>**NATIONAL MEDICAL SERVICES, INC.**<br>**d/b/a NMS LABS**<br>**Defendants** | **: CASE NO. CV 07 5642 BZ**<br>**:**<br>**:**<br>**: MEMORANDUM OF POINTS AND**<br>**: AUTHORITIES IN OPPOSITION TO**<br>**: DEFENDANT NMS LAB'S**<br>**: MOTION TO DISMISS PLAINTIFFS'**<br>**: AMENDED COMPLAINT**<br>**:**<br>**: [Fed.R.Civ.P. 12(b)(6)]**<br>**:**<br>**: Amended Complaint filed: January 9, 2008**<br>**:**<br>**:** Date:     March 19, 2008<br>**:** Time:     10:00 a.m.<br>**:** Courtroom: G<br>**:** Judge:    Hon. Bernard Zimmerman |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NMS LAB'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## PLAINTIFFS WAIVE ORAL ARGUMENT

TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………….…….…...   1

STATEMENT OF FACTS  …………………………………………………….……....   2

      I.     Procedural …………………………………………………………..…   2

      II.    Pertinent Allegations of the Complaint ………………………….……..…   2

ARGUMENT ………………………………………………………………….…..…   10

      I.     Standard of Review …………………………………………….…..…   10

      II.    The Complaint Alleges Viable Claims for Negligence ………………..……..…   10

      III.   A Claim for General Damages Should be Allowed……………………………   13

CONCLUSION   …………………………………………………………….……...   20

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
NMS LAB'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

<u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Everest & Jennings, Inc. v. American Motorist Insurance Co.*
    23 F.3d 226, 228 (9th Cir. 1994) ………………………………………………….. 10

*Garlick et al. v. Quest et al.*
    USDC, New Jersey, Case No. 06-cv-6244 …………………………………………….. 1

*Lee v. City of Los Angeles*
    250 F.3d 668, 688 (9th Cir. 2001)…………………………………………….….….…… 10

*Navarro v. Block*
    250 F.3d 729, 732 (9th Cir. 2001)…………….................................................................... 10

*Quisenberry v. Compass Vision et al.*
    USDC, Southern Dist. CA, Case No. 07 CV 1135 BEN AJB ……………..…………..…… 1

*Wilson v. Compass Vision et al.*
    USDC, Northern Dist. CA, Case No. C07-3431 BZ ………..…….…..    1, 2, 10, 13, 17, 19

**State Cases**

*Allen v. Jones*
    104 Cal. App. 3d 207, 215 (Cal. App. 3 Dist. 1980 ………………………………….. 18

*Branch v. Homefed Bank*
    6 Cal. App. 4th 793 (1992) ……………………………………………………………….. 18

*Friedman v. Merck & Co.*
    107 Cal. App. 4th 454, 484 (Cal. App. 2 Dist. 2003)………………………………… 18, 19

*Molien v. Kaiser Foundation Hospitals*
    27 C3d 916 (1980) ……………………………………………….........    13, 14, 15, 16, 18, 19

*Perez-Rocha M.D v. Comm. Of Pa.*
    (Commonwealth Court of Pa., No. 2225 C.D. 2006)………………….………… 11, 12, 13

*Rowland v. Christian*
    69 Cal. 2d 108, 112 (1968) ……………………………………………………………… 1

## PRELIMINARY STATEMENT

The negligence claims made on behalf of the five plaintiffs, Joanne Elizabeth Cleveland, Cynthia Daniels, Laura Fujisawa, Caroline Howe and Tracey Moore are very similar to the negligence claim sustained against the same defendant, National Medical Services ("NMS"), in the related *Wilson* case; wherein Your Honor has previously denied defendant's 12 (b) (6) Motion to Dismiss.[1]   The basis of defendant's argument herein, that there is no duty under the facts as pled, is the same as was made by the defendant and rejected by Your Honor in *Wilson*. It is respectfully submitted that by the same reasoning, Your Honor should deny the instant motion and allow the negligence claims of the plaintiff nurses and pharmacists herein. Plaintiffs incorporate plaintiff's arguments made in the *Wilson* response to NMS Labs' motion to dismiss, as if fully set forth herein. To avoid redundancy and respect Your Honor's time, plaintiffs herein will not rehash those arguments. Only where a new argument has been made, will it be addressed herein.

The defendant has impertinently brought to Your Honor's attention the "Not for Publication" decision in *Garlick et. al. v. Quest Diagnostics, Inc. et. al.,* an EtG lawsuit now on appeal in the Federal District Court of New Jersey. The citation and argument of *Garlick* is the basis of the concurrent Motion to Strike before Your Honor.[2] Plaintiffs continue to assert that

---

[1] December 27, 2007 "Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Setting Case Management Conference" of the Honorable Bernard Zimmerman in *Deborah Wilson v. Compass Vision, Inc. and National Medical Services, Inc., d/b/a NMS Labs*, Case No. C07-3431 BZ

[2] Since this response is due prior to any decision in plaintiffs' motion to strike, a short argument is made that unlike in Your Honor's opinion in *Wilson* and Judge Benitez' reasoning in *Quisenberry,* with which Your Honor agreed and adopted, no *Rowland v. Christian* analysis was made by Judge Cavanaugh in *Garlick*. Moreover Judge Cavanaugh was under the incorrect assumption (page 10) that it was not alleged that the defendants there "decided"… "what levels of EtG would be used to constitute positive results" In the instant case, as in Wilson, there are clear allegations that the defendant set the cut offs too low. As Your Honor wrote in footnote 5 of the Wilson opinion, "Plaintiff alleges that defendant negligently set the EtG cut off level so low that plaintiff tested false positive twice."

---

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ**

Your Honor should not consider a "Not for Publication" opinion.

The plaintiffs herein have pled in their Amended Complaint so as to amplify the factual bases for their claims for general damages, including injury to their reputations and credibility in their professions (as nurses or pharmacists) and humiliation and emotional distress.[3] The main thrust of the argument made herein is to the appropriateness of allowing general damages.

## STATEMENT OF FACTS

### I.    PROCEDURAL

Plaintiffs filed the original Complaint on November 6, 2007. On December 21, 2007 counsel for NMS accepted service. Plaintiffs Amended Complaint was filed as of right on January 9, 2008, prior to any responsive pleading being filed to the Complaint. On January 17, 2008, counsel for NMS accepted service of the Amended Complaint. On January 29, 2007 defendant NMS filed the instant motion in accord with Your Honor's scheduling Order after the Case Management Conference in the related Wilson case.

### II.    PERTINENT ALLEGATIONS OF THE AMENDED COMPLAINT

There are general allegations in the Amended Complaint made as to the defendant NMS, that are pertinent to all five plaintiffs, as well as facts pled specifically to each plaintiff.

A.    The General  Allegations Relevant To This Motion Are That:

NMS, a drug testing laboratory, became a leading proponent of urine testing for ethyl glucuronide as proof of the drinking of alcoholic beverages, touting the test as the "gold standard."

---

[3] A similar amplification was made in the Amended Complaint in *Wilson,* pursuant to Your Honor's grant of leave to file an Amended Complaint to articulate "allegations which might support an award of emotional distress damages" as were made during oral argument in *Wilson* before Your Honor.

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ**

NMS, without conducting adequate scientific or medical studies, negligently claimed and continues to claim that EtG is not detectable in urine, at cut offs it set, unless an alcoholic beverage has been consumed. The set cut-offs are arbitrary. The California Boards of Nursing and Pharmacy, on behalf of nurses and pharmacists in their respective recovery programs, including plaintiffs Joanne Elizabeth Cleveland, Cynthia Daniels, Laura Fujisawa, Caroline Howe and Tracey Moore, relied on NMS' claims as to the validity of the EtG test in instituting EtG testing. NMS performed the tests, and reported and interpreted the results to the Boards, of the EtG testing upon nurses and pharmacists, including the plaintiffs. NMS claimed and reported on their written report, that a result, at or above the cut off, was proof that the person tested drank an alcoholic beverage, in violation of their recovery. (Paragraphs 9, 10, 14, 19-21, and 23 of the Amended Complaint)

NMS knew that these plaintiffs would be in jeopardy of losing their licenses and jobs, and would suffer damage to their credibility and reputations, if they were reported as testing positive. (Paragraphs 31, 33, 34 and 35)  On September 28, 2006, after hearings, the Substance Abuse and Mental Health Services Administration (SAMHSA) advised that EtG testing, for use as proof that an individual prohibited from drinking had truly been drinking, was scientifically unsupportable and should not be used for disciplinary action. Despite this advisory and other warnings and information on the invalidity of the EtG test, NMS continued and continues to promote its use to detect the drinking of alcohol in those who are in recovery. (Paragraphs  26-31)

NMS by promoting, advertising, marketing, selling, and/or contracting with the licensing boards, and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results. Because of the obvious, foreseeable, serious and devastating consequences (including, but not limited to damage to plaintiff's reputation, credibility and emotional well being)

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS     CASE NO. CV 07 5642 BZ**

of reporting that the results were positive (within cutoffs established by the defendants), defendants had to use a reasonable degree of care to avoid erroneous test results to the foreseeable test subjects, including the plaintiffs. (Paragraphs 32, 35)

NMS instead acted negligently and recklessly by:  marketing their tests without conducting adequate scientific or medical studies, establishing cutoffs over which test results would be reported as "positive" that were arbitrary and scientifically unreliable and invalid, promoting the EtG test with unsupported and false statements that a positive EtG test would unequivocally establish that the subject individual had consumed alcoholic beverages, publishing warnings that the failure to conduct such a test would be negligence on the part of an employer or licensing board, falsely asserting that the EtG test was the "gold standard" in ferreting out former alcoholics or drug users who were resuming or beginning to engage in prohibited alcoholic consumption in occupations requiring a "zero tolerance", falsely asserting that EtG is not detectable in the urine unless an alcoholic beverage has been consumed, thereby concealing that incidental or involuntary exposure or consumption of products containing alcohol could result in positive findings, failing and refusing to re-evaluate and re-set cutoff limits at levels that were scientifically sound and reliable markers for detecting the prohibited activity of alcoholic beverage consumption, and excluding other causes for their results, failing to heed the warnings or cautionary advisories issued by Dr. Skipper, SAMHSA and others – that the cutoff levels were unreliable and arbitrary, and that incidental use could trigger positive results at levels at or above the cutoffs – and, instead, denying publicly and maintaining the warnings were insufficient to discredit the  EtG test and its cutoff limits, failing to protect the plaintiffs from foreseeable substantial harm in the form of disciplinary and punitive measures, when their EtG test systems were employed and relied upon for their accuracy and reliability, and utilizing, reporting and interpreting the EtG results of plaintiffs to assert that plaintiffs were violating their recovery by intentionally drinking alcoholic beverages. (Paragraph 36)

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ**

It was foreseeable to NMS that false positive EtG results would severely damage the reputation and credibility of nurses and pharmacists who were maintaining their recovery from addiction, and that the apprehension of further false positives and the damage to their reputation would cause severe anxiety and emotional distress to such professionals, who had spent years in education to gain the right to practice their chosen profession, and who had in actuality maintained their recovery by overcoming addictions in order to reestablish their reputations as competent professionals. (Paragraph 37 )

Plaintiffs allege that the actions of NMS were wanton, reckless and outrageous. NMS' actions concerning EtG and its sale of the testing program, as giving reliable and absolute proof that a person had drank alcoholic beverages, were in reckless disregard of the lack of research done and the damaging information that came to light about the test. (Paragraphs 23-30, 34, 36, 56, 72, 91, 107 and 122)

B.     Specifically As To Each Plaintiff:

1.  Joanne Elizabeth Cleveland - Nurse:

Despite working hard to regain her reputation by maintaining her recovery from pain medication dependency for nearly two years, and her compliance with all aspects of her diversion program, and despite her competently and soberly performing her job, NMS negligently performed and interpreted four EtG tests as conclusive proof that Ms. Cleveland had violated her recovery program by drinking alcoholic beverages. Ms. Cleveland continued to declare and maintain that she had not drank alcoholic beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the actions of NMS, in maintaining that these EtG tests were proof that she had drank alcoholic beverages. While in the program, Ms. Cleveland suffered severe apprehension and anxiety from the fear of again having a false positive EtG test and from the possibility of suffering a permanent stain on her license should she not be allowed to finish her program.

PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ

As a result of the negligence and/or recklessness of NMS, Ms. Cleveland was not allowed to work as a nurse for approximately four weeks and had her program extended. Eventually Ms. Cleveland was forced to leave the diversion program when she was unable to afford unneeded mandatory in-patient treatment, which the Board required as a result of her "positive" EtG tests, and now faces at least three years of probation, with attendant costs, and the future loss of her license to practice nursing. She now has damage to her reputation and credibility in her chosen profession and a permanent stain on her license. The stain on Ms Cleveland's license, her damaged reputation and credibility, the apprehension that she would again have a false positive testing, and the probable future revocation of her nursing license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that these tests must have been false positives. Her monetary losses to date total approximately $17,000 dollars.

(Paragraphs 39-56)

2. Cynthia Daniels - Pharmacist

Despite working hard to regain her reputation by maintaining her recovery from pain medication dependency for nearly two years, and her compliance with all aspects of her diversion program, and despite her competently and soberly performing her job, NMS negligently performed and interpreted four EtG tests as conclusive proof that Dr. Daniels had violated her recovery program by drinking alcoholic beverages. Dr. Daniels continued to declare and maintain that she had not drank alcoholic beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the actions of NMS, in maintaining that these EtG tests were proof that she had drank alcoholic beverages. While in the program, Dr. Daniels suffered severe apprehension and anxiety from the fear of again having a false positive EtG test and from the possibility of suffering a permanent stain on her license should she not be allowed to finish her program.

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS     CASE NO. CV 07 5642 BZ**

As a result of the negligence and/or recklessness of NMS, Dr. Daniels was suspended for over six months and not allowed to work as a pharmacist, had difficulty finding employment after the suspension, was required to stay longer in the program and was required to have additional testing. She now has damage to her reputation and credibility in her chosen profession and the threat of a permanent stain on her license. The threat of a permanent stain on Dr. Daniels' license, her damaged reputation and credibility, the apprehension that she would again have a false positive testing, and the possible future revocation of her pharmacy license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that these tests must have been false positives. Her monetary losses to date total approximately $120,000 dollars.

(Paragraphs 58-72)

3.   Laura Fujisawa - Pharmacist

Despite working hard to regain her reputation by maintaining her recovery from pain medication dependency for nearly two years, and her compliance with all aspects of her diversion program, and despite her competently and soberly performing her job, NMS negligently performed and interpreted six EtG tests as conclusive proof that Dr. Fujisawa had violated her recovery program by drinking alcoholic beverages. Dr. Fujisawa continued to declare and maintain that she had not drank alcoholic beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the actions of NMS, in maintaining that these EtG tests were proof that she had drank alcoholic beverages. While in the program, Dr. Fujisawa suffered severe apprehension and anxiety from the fear of again having a false positive EtG test and from the possibility of suffering a permanent stain on her license should she not be allowed to finish her program.

As a result of the negligence and/or recklessness of NMS, Dr. Fujisawa has been prevented from working as a pharmacist for over one year and was required to have additional

testing and treatment. Dr. Fujisawa was terminated from her program as of about March 2007**,** and faces revocation proceedings, for which she has had to hire an attorney. She now faces either years of probation, with attendant costs, and/or the future loss of her license to practice as a pharmacist. She now has damage to her reputation and credibility in her chosen profession and a permanent stain on her license. The stain on Dr. Fujisawa's license, her damaged reputation and credibility, the apprehension that she would again have a false positive testing, and the probable future revocation of her nursing license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that these tests must have been false positives. Her monetary losses to date total more than $105,000 dollars.

(Paragraphs 74-91)

          4.  Caroline Howe - Nurse

          Despite working hard to regain her reputation by maintaining her recovery from pain medication dependency for over a year, and her compliance with all aspects of her diversion program, and despite her competently and soberly performing her job, NMS negligently performed and interpreted seven EtG tests as conclusive proof that Ms. Howe had violated her recovery program by drinking alcoholic beverages. Ms. Howe continued to declare and maintain that she had not drank alcoholic beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the actions of NMS, in maintaining that these EtG tests were proof that she had drank alcoholic beverages. While in the program, Ms. Howe suffered severe apprehension and anxiety from the fear of again having a false positive EtG test and from the possibility of suffering a permanent stain on her license should she not be allowed to finish her program.

          As a result of the negligence and/or recklessness of NMS, Ms. Howe has had her program extended; she was not allowed to work as a nurse for approximately 10 weeks; in January

2007 she was prohibited from taking a nursing position that paid substantially more than what she was then making; as of August 30, 2007 she had to leave her job with the Red Cross. She also has been required to have additional testing, treatment and program attendance. She now has damage to her reputation and credibility in her chosen profession and the threat of a permanent stain on her license. The threat of a permanent stain on Ms. Howe's license, her damaged reputation and credibility, the apprehension that she would again have a false positive testing, and the possible future revocation of her nursing license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that these tests must have been false positives. Her monetary losses to date total approximately $45,000 dollars.

(Paragraphs 93-107)

### 5.  Tracey Moore - Pharmacist

Despite working hard to regain her reputation by maintaining her recovery from pain medication dependency for over ten years, and her compliance with all aspects of her diversion program, and despite her competently and soberly performing her job, NMS negligently performed and interpreted one EtG test of 315 ng/ml as conclusive proof that Dr. Moore had violated her recovery program by drinking alcoholic beverages. Dr. Moore continued to declare and maintain that she had not drank alcoholic beverages in violation of her agreement, but she was labeled a liar, and not believed, due to the actions of NMS, in maintaining that the EtG test was proof that she had drank alcoholic beverages. Dr. Moore suffers from severe apprehension and anxiety from the fear of again having a false positive EtG test and from the possibility of suffering a permanent stain on her license should she not be allowed to finish her program.

As a result of the negligence and/or recklessness of NMS, Dr. Moore was suspended

for one week and not allowed to work as a pharmacist, was ordered to test more often, and have additional counseling. She now has damage to her reputation and credibility in her chosen profession and the threat of a permanent stain on her license. The threat of a permanent stain on Dr. Moore's license, her damaged reputation and credibility in her chosen profession, the apprehension that she would again have a false positive testing, and the possible future revocation of her nursing license after years of education and commitment to her profession, have caused plaintiff to suffer severe emotional distress, despite her knowing that she did not drink alcoholic beverages and that this test must have been a false positive. Her monetary losses to date total approximately $4,000 dollars.

(Paragraphs 109-122)

## ARGUMENT

### I.    STANDARD OF REVIEW

"A Rule 12 (b) (6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) Review is limited to the contents of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) A claim may be dismissed only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Navarro,* supra. In resolving 12 (b) (6) motions to dismiss, the Court must accept all of plaintiffs' factual allegations as true and view all reasonable inferences in their favor. *Everest & Jennings, Inc. v. American Motorist Insurance Co.,* 23 F.3d 226, 228 (9th Cir. 1994)

### II.    THE COMPLAINT ALLEGES VIABLE CLAIMS FOR NEGLIGENCE

It is respectfully submitted that Your Honor has already decided the issue of whether California Courts would find a duty on the part of defendant NMS to the persons in the position of the plaintiffs, in the related *Wilson* case. While no new substantive arguments of significance have

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ**

been made by defendant NMS to distinguish the instant claims, there are several new points made by defendant that are either incorrect or out of context.

Defendant is incorrect in telling this Court that the Amended Complaint does not allege that defendant NMS Labs breached any duty owed to the plaintiffs. Incorporated into each of the five individual counts (one for each individual plaintiff) are the general allegations made in paragraphs 32, 35 and 36 of the Amended Complaint:

> 32.    Defendants, by promoting, advertising, marketing, selling, and/or contracting with the licensing board, and/or designing, implementing, and managing the drug and alcohol testing program, and/or collecting the urine samples and/or utilizing, reporting and interpreting the EtG test to allegedly establish that the plaintiffs consumed an alcoholic beverage, had a duty to use a reasonable degree of care to avoid erroneous test results.

> 35.    Because of the obvious, foreseeable, serious and devastating consequences (including, but not limited to damage to plaintiff's reputation, credibility and emotional well being) of reporting that the results were positive (within cutoffs established by the defendants), defendants had to use a reasonable degree of care to avoid erroneous test results to the foreseeable test subjects, including the plaintiffs.

Paragraph 36 and its subsections, detailed above in the relevant general allegations section of this brief, allege how the defendant acted negligently and/or recklessly, i.e. breached the stated duty.

*Perez-Rocha M.D v. Comm. Of Pa.* (Commonwealth Court of Pa., No. 2225 C.D. 2006), cited by the defendant, and attached as Exhibit 2 to its Request for Judicial Notice, is outdated and inapposite. It is not determinative of whether or not a testing laboratory has a duty to a tested individual. Whether or not one State Board was allowed, by the evidence then before it, to conclude that the person who tested positive for EtG was in violation of her probation, is not relevant and has no persuasive value to the issues before this Honorable Court in Defendant's Motion to Dismiss.

The facts that were in evidence before the Court in *Perez- Rocha* are out of date with present knowledge concerning the use of EtG testing. In that case, a three judge panel of the Pennsylvania intermediate appellate court that hears appeals of decisions of governmental administrative hearings,

upheld the decision of the Pennsylvania State Board of Medicine. The decision was based solely on

a review of the Board's evidentiary hearing that took place in April, 2006. *Perez- Rocha,* page 7

That hearing predated the September 28, 2006 Substance Abuse and Mental Health Services

Administration (SAMHSA) Advisory on EtG testing that is quoted in Paragraph 30 of the Amended

Complaint.

> Currently, the use of an EtG test in determining abstinence lacks
> sufficient proven specificity for use as primary or sole evidence that an
> individual prohibited from drinking, in a criminal justice or a
> regulatory compliance context, has truly been drinking. Legal or
> disciplinary action based solely on a positive EtG, or other test discussed
> in this *Advisory* is inappropriate and scientifically unsupportable at this
> time. These tests should currently be considered as potential valuable
> clinical tools, but their use in forensic settings is premature.

This important recognition, of the inadequacy of the EtG test for the purpose of determining whether

the person testing positive was drinking, was not in evidence before the Board of Medicine, and was

therefore not part of the consideration of the *Perez- Rocha* decision.

Further proof of the opinion being out of date on the current knowledge concerning EtG

testing for use as proof of drinking, at the cut offs set by defendant NMS, is the suspension of the

test for use in monitoring physicians in diversion in Pennsylvania. Attached as Exhibit 1, is the

January 24, 2007 letter of the Medical Director of Physician's Health Programs, sent out to

monitored physicians in Pennsylvania, serving notice that EtG testing was being suspended in

Pennsylvania.

Moreover the *Perez- Rocha* decision was based on the Frye test of general acceptance of the

EtG test in the scientific community. Whether the test was generally accepted at that time, does not

mean that there was no negligence by the defendant in promoting the test to reach that acceptance. It

also does not mean that it was not being negligently interpreted to the detriment of the plaintiffs. The

plaintiffs' case herein is not dependent on whether the EtG test accurately tests for metabolites of

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS      CASE NO. CV 07 5642 BZ**

alcohol, which is not disputed. The problem is that the omnipresence of alcohol in everyday products in our society, limits the tests effectiveness in determining whether the presence of EtG in urine, at the cut offs set by the defendant, is determinative of a person's having drank an alcoholic beverage. Thus whether the test is scientifically accurate in finding EtG in the urine of the tested person does not exclude the negligent promotion and interpretation of the test in the context of the instant action.

Ironically, the *Perez-Rocha* decision provides evidence of defendant's negligence in promoting the use of EtG testing, since the Vice President of NMS laboratory operations, Anthony G. Constantino testified at the medical board hearing that based on a positive finding at the then (and now discredited) cut off of 250 ng/ml, Dr. Perez- Rocha must have drank in violation of her probation. *Perez- Rocha,* footnote 2 on p.3, and p. 7

## III.    A CLAIM FOR GENERAL DAMAGES SHOULD BE ALLOWED

This Honorable Court has recognized that the finding of a duty and negligence action, under the very similar facts of the related *Wilson* case, was an "issue of first impression" (*Wilson* Order page 3)  It is respectfully submitted that whether general damages are allowable should also be treated as an issue of first impression. It is further submitted that just as foreseeability of the harm is a major factor in the determination of whether to find a duty under the *Rowland v. Christian* balancing test; the foreseeability of injury herein to credibility and reputation of the plaintiffs and consequent emotional harm to them, should be determinative of the allowance of general damages in this action.

A.  California Law – *Molien v. Kaiser Foundation Hospitals*

It is not true, as argued by defendant, that under California law physical injury is necessary for the allowance of emotional distress damages in a negligence action. The California Supreme Court in *Molien v. Kaiser Foundation Hospitals* 27 C3d 916 (1980), in the context of

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS       CASE NO. CV 07 5642 BZ**

an erroneously diagnosed infectious social disease, considered the question: "To what extent should the law permit recovery of damages for the negligent infliction of emotional or mental distress unaccompanied by physical injury?" The Court concluded: "As will appear, in the light of contemporary knowledge we conclude that emotional injury may be fully as severe and debilitating as physical harm, and is no less deserving of redress; the refusal to recognize a cause of action for negligently inflicted injury in the absence of some physical consequence is therefore an anachronism." *Molien* at 918.

Mrs. Molien was negligently advised that she had syphilis. Mr Molien sued for his own emotional distress and for his loss of consortium. The Court stated that "In the case at bar the risk of harm to plaintiff was reasonably foreseeable to defendants. It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse…" ; but questioned whether the husband could recover: "There remains the question whether plaintiff is barred from recovery by the fact that he suffered no physical injury." *Molien* at 923.

The Court explained: "The primary justification for the requirement of physical injury appears to be that it serves as a screening device to minimize a presumed risk of feigned injuries and false claims;" and "Although most courts still adhere to the early view, the scholars assert that such artificial barriers to recovery are unnecessary." *Molien* at 925, 926 In reviewing cases in California that had allowed compensation the court stated:

> Our courts have instead devised various means of compensating for the infliction of emotional distress, provided there is some assurance of the validity of the claim. As we have seen, physical injury, whether it occurs contemporaneously with or is a consequence of emotional distress, provides one such guarantee… Another arises when the plaintiff asserts an independent cause of action apart from personal injury. Thus in a suit against an insurer for damages resulting from its wrongful refusal to settle a claim against the insured within the policy limits, the plaintiff was permitted to recover for mental distress as well as for pecuniary loss. We concluded: "Obviously, where, as here, the claim is actionable and

has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced, and we are not here concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests." (citations omitted)

*Molien* at 926, 927

The Court continued that the unqualified requirement of physical injury was not justified:

Although we recognize a need to guard against fraudulent claims, we are not persuaded that the presently existing artificial lines of demarcation are the only appropriate means of attaining this goal. As observed by Presiding Justice Gardner in his concurring opinion in Allen v. Jones (1980) 104 Cal. App. 3d 207 , 216 [ 163 Cal. Rptr. 445] , "In no other area are the vagaries of our law more apparent than in the distinction between mental and emotional distress accompanied by physical manifestation and such discomfort unaccompanied by physical manifestation."

The Hawaii Supreme Court confronted the issue forthrightly and discarded the traditional rule that there can be no recovery for the negligent infliction of emotional distress alone…

We agree that the unqualified requirement of physical injury is no longer justifiable. It supposedly serves to satisfy the cynic that the claim of emotional distress is genuine. Yet we perceive two significant difficulties with the scheme. First, the classification is both overinclusive and underinclusive when viewed in the light of its purported purpose of screening false claims. It is overinclusive in permitting recovery for emotional distress when the suffering accompanies or results in any physical injury whatever, no matter how trivial. If physical injury, however slight, provides the ticket for admission to the courthouse, it is difficult for advocates of the "floodgates" premonition to deny that the doors are already wide open: as we observed in Capelouto v. Kaiser Foundation Hospitals, supra, 7 Cal. 3d at page 893 , "mental suffering frequently constitutes the principal element of tort damages . . . ." More significantly, the classification is underinclusive because it mechanically denies court access to claims that may well be valid and could be proved if the plaintiffs were permitted to go to trial.

The second defect in the requirement of physical injury is that it encourages extravagant pleading and distorted testimony. Thus it has been urged that the law should provide a remedy for serious invasions of emotional tranquility, "otherwise the tendency would be for the victim to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury, upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured." (Citations omitted)

*Molien* at 926-929

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS**      **CASE NO. CV 07 5642 BZ**

The Court concluded, holding that whether a predictable emotional harm was serious enough and genuine was a jury question and should not be screened by Courts at the pleading stage :

> In our view the attempted distinction between physical and psychological injury merely clouds the issue. proof; whether the plaintiff has suffered a serious and compensable injury should not turn on this artificial and often arbitrary classification scheme…
> As Justice Traynor explained in this court's unanimous opinion in State Rubbish etc. Assn. v. Siliznoff, supra, 38 Cal. 2d at page 338 , the jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience. …To repeat: this is a matter of proof to be presented to the trier of fact. The screening of claims on this basis at the pleading stage is a usurpation of the jury's function…
>
> For all these reasons we hold that a cause of action may be stated for the negligent infliction of serious emotional distress. Applying these principles to the case before us, we conclude that the complaint states such a cause of action. The negligent examination of Mrs. Molien and the conduct flowing therefrom are objectively verifiable actions by the defendants that foreseeably elicited serious emotional responses in the plaintiff and hence serve as a measure of the validity of plaintiff's claim for emotional distress. As yet another corroborating factor, we note the universally accepted gravity of a false imputation of syphilis: by statute it constitutes slander per se. ( Civ. Code, § 46 , subd. 2; Schessler v. Keck (1954) 125 Cal. App. 2d 827 [ 271 P.2d 588]. )

*Molien* at 929- 931

Thus, in California, if there is sufficient foreseeability of emotional harm occurring as a result of the defendants' negligence, a claim for emotional distress should be allowed.  It is a jury question as to whether and to what extent the actions of the defendant caused the plaintiffs' distress. There is no requirement of physical injury to establish the validity of a plaintiff's claim for emotional distress.

### B.  Applying *Molien*

It is respectfully submitted that the predictability of valid emotional harm in the instant case is at least as strong as that in *Molien*. With the erroneous interpretation of a flawed drug test it is inevitable that there will be injury to the tested person's reputation. It is to be labeled a drunk, and at that a drunk who is

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS        CASE NO. CV 07 5642 BZ**

unwilling to be truthful about their problem and who is therefore unfit for their work. Just as the Court recognized about a false imputation of syphilis, a false imputation that one is an unrepentant alcoholic unfit for their profession is also slander per se under California Civ. Code, § 46. A more powerful guarantee of emotional distress in the instant case is that the false imputation is not second hand to one's spouse, it is directly to the plaintiffs. Thus, the claimed negligence is from "objectively verifiable actions" by the defendant that "foreseeably elicited serious emotional responses" in the plaintiffs.

This distress for many of the plaintiffs was repeated over and over since they had numerous false positives. Added is the fear of testing positive when you have no idea why it is happening and when it may happen again. All of this with persons suffering from the illness of addiction with fragile reputations to begin with, who when on the brink of victory, had the rug pulled out from under them by the introduction of this faulty test into their program. For example plaintiff Dr. Cynthia Daniels who after nearly two years of working hard to maintain her recovery and regain her professional reputation, and within weeks of being eligible for transition out of the program had four false positives that caused over six months of suspensions costing her approximately $120,000.00. The genuineness of her emotional distress at her ruined reputation cannot be questioned.

C. There Is No Requirement Under California Law That The Emotional Distress Be "Highly Unusual"

As was argued before Your Honor, in *Wilson*, plaintiffs take issue with the reasoning of Judge Benitez, concerning the claim for emotional distress damages, in the similar EtG negligence case of *Quisenberry*. While Judge Benitez wrote "We cannot imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing of individuals" (Quisenberry Order page 7) ; he did not apply this reasoning when he dismissed the claim for

emotional damages. With due respect to Judge Benitez, it is submitted that his dependence on *Allen v. Jones*, 104 Cal. App. 3d 207, 215 (Cal. App. 3 Dist. 1980) and *Friedman v. Merck & Co*., 107 Cal. App. 4th  454, 484 (Cal. App. 2 Dist. 2003) for the proposition that the emotional distress must be "highly unusual as well as predictable" (Quisenberry Order page 9) is unfounded. While the words "highly unusual" are found in *Friedman,* it is only in a quote from *Branch v. Homefed Bank* 6 Cal. App. 4th 793 (1992). This quote, however, is an attempt by the Lower Appellate Court panel in *Branch* to explain the holdings in *Allen* and *Molien*, neither of which use those words or hold that the emotional distress must be "highly unusual" to be recoverable.

   *Molien,* being the definitive word from the California Supreme Court, specifically addressed the need for California courts to stop screening out plausible and foreseeable claims for negligent infliction of emotional distress at the pleading stage, on the basis of no physical injury, where the risk of the emotional harm was foreseeable from objectively verifiable actions of the defendant. To place a new hurdle, such as "highly unusual" emotional distress, not specified by the *Molien* decision is against the specific directive of the California Supreme Court.

   The reasoning on which Judge Benitez distinguished the emotional distress in these false positive Etg cases from the emotional harm in Molien is also flawed. He distinguished an allowable claim, a husband of a patient misdiagnosed with syphilis, from a non allowable claim, the false positive EtG drug test, on the basis that the EtG tested individual would know the result was erroneous. This distinction in the scenario of employment drug testing is fatuous. As was pled for all of the victims of this test, they successfully struggled against addiction, some for years, with a regained reputation and professional credibility in sight; (The proverbial light at the

end of a long dark tunnel). Then as a result of a flawed test; (A true biblical stumbling block in front of the blind); they were labeled as drunks and liars, and prevented from working at their chosen profession, despite knowing they had done everything asked of them to maintain their recovery. Whether or not, as individuals, they know they are telling the truth, their world did not believe them, their reputations were damaged and the humiliation from such treatment is clearly foreseeable. The fact that it has happened to a substantial number of professionals gives added guarantees to this Court of the validity of the emotional harm.

As argued before Your Honor in *Wilson,* this is obvious in the media circus now revolving around Roger Clemens, the professional baseball player accused of taking steroids. Whether or not he knows the accusation to be false, his reputation has been destroyed and many are calling him a liar. If he is telling the truth, none would doubt his emotional distress and anxiety from the injury to his reputation. In like manner there is genuineness to the claimed emotional distress of the plaintiffs, even though they know the test was erroneous. The distress comes from society's judgment regardless of the truth.

D.  Defendant's Argument Is Unpersuasive

The cases cited by the defendant are all lower appellate court cases, not California Supreme Court cases. *Molien* is the ruling precedent. Specifically, *Friedman v. Merck & Co*., 107 Cal. App. 4th 454, is distinguishable. That court held that there was no duty as a matter of law where the emotional distress claimed was unforeseeable since it was as a result of the vegan plaintiff's unique sensitivity to animal products in a perfectly good TB test. Here, as already determined by Your Honor, there is foreseeable harm justifying a duty.

The emotional damages claimed are not incident to economic loss. They are the foreseeable consequence from being labeled as a drug addicts and liars as a result of the false positive EtG alcohol test, while truthfully maintaining recovery. The implication that they would

lie about their recovery was humiliating, reasonably and foreseeably causing anxiety and emotional distress. The stains on their licenses and its possible revocation and the uncertainty of whether they would face another false positive despite not drinking added further anxiety and insult. This invalid test caused a real and justified apprehension that they would no longer be able to practice their chosen professions.

It would not be logical to recognize a duty due to an inevitable injury, and then not let the plaintiff recover for that injury. NMS, by negligently promoting and interpreting faulty test, for which they set cut off levels so low that many plaintiffs tested false positive numerous times, caused the plaintiffs to be stigmatized as an incorrigible drug addicts, unfit to practice as nurses and pharmacists. NMS should therefore be held accountable for the injuries flowing from the loss of reputation and stigmatization, including emotional injuries. Defendant NMS' motion to dismiss plaintiff's claims for emotional damages should therefore be denied.

## CONCLUSION

For all the foregoing reasons set forth above, Plaintiff respectfully requests that this Honorable Court dismiss the Motion of NMS to Dismiss Plaintiff's Amended Complaint. Dated:

Respectfully Submitted,

POMERANTZ PERLBERGER & LEWIS LLP

BY:     _____/s/_____
Norman Perlberger, Esquire
Attorney Pro Hac Vice for Plaintiff

**PLAINTIFFS' MEMO OF P & A OPPOSING NMS MOTION TO DISMISS        CASE NO. CV 07 5642 BZ**



**Physicians'**
**Health Programs**
a program of
**The Foundation**
of the Pennsylvania Medical Society

January 24, 2007

Dear PHP Participant:

In recent months, we have become aware of the mounting controversy over accurate interpretation of ethylglucuronide (EtG) tests. While this controversy is being resolved, we find it prudent to suspend EtG testing, since the highly emotional climate of the controversy seriously limits the usefulness and practicality of the test as a monitoring tool.

If, as we believe, subsequent research validates the efficacy of this testing in identifying ethyl alcohol ingestion, we will notify you when we are going to begin to use it again.

**NOTE: If EtG is not listed in the toxicology screening section of your agreement with us, this information does not pertain to you at this time.**

Sincerely,

John W. Martyniuk, PhD, MD
Medical Director

777 East Park Drive • PO Box 8820 • Harrisburg, PA 17105-8820
Tel 717.558.7819 • TOLL FREE 1.866.747.2255 • FAX 717.558.7818 • EMAIL php-foundation@pamedsoc.org • WEB www.pamph.org
The official registration and financial information of the Foundation may be obtained from the Pennsylvania Department of State by calling toll-free within Pennsylvania, 1-800-732-0999. Registration does not imply endorsement.

EXHIBIT "1"

Norman Perlberger, Esquire                          Attorneys Pro Hac Vice for Plaintiff
POMERANTZ PERLBERGER & LEWIS LLP
21 South 12th Street, 7th Floor
Philadelphia, PA 19107
(215)  569-8866
nperlberger@ppl-law.com
ehlewis@ppl-law.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JOANNE ELIZABETH CLEVELAND,** | : | **CIVIL ACTION** |
| **CYNTHIA DANIELS, LAURA FUJISAWA,** | : | |
| **CAROLINE HOWE and TRACEY MOORE** | : | |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **COMPASS VISION, INC. and** | : | **NO. CV 07 5642 BZ** |
| **NATIONAL MEDICAL SERVICES, INC.** | : | |
| **d/b/a NMS LABS** | : | |
| | : | |

## CERTIFICATION OF SERVICE

NORMAN PERLBERGER, ESQUIRE, hereby certifies that service of Plaintiffs' Memorandum

of Points and Authorities in Opposition to Strike Defendant National Medical Services, Inc.'s Motion to

Dismiss Plaintiffs' Amended Complaint was made this date by ecf-filing to the following:

Catherine A. Salah, Esquire                 Christian Barrett Green, Esquire
Gordon & Rees, LLP                          Law Offices of Samuel G. Grader
275 Battery Street, Suite 2000              1680 Howe Street, Suite 350
San Francisco, CA    94111                  Sacramento, CA    95825


                              /s/
                        NORMAN PERLBERGER, ESQUIRE


DATED:      February 19, 2008