```
CHRISTIAN GREEN, State Bar No. 173502
LAW OFFICES OF SAMUEL G. GRADER
1860 Howe Avenue, Suite 350
Sacramento, CA  95825
Telephone: (916)567-6404
Direct Line: (916)567-6426
FAX: 866-903-4464

Attorney for Defendant
NATIONAL MEDICAL SERVICES, INC., D/B/A NMS LABS
```

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ELIZABETH CLEVELAND, CYNTHIA DANIELS, LAURA FUJISAWA, CAROLINE HOWE AND TRACEY MOORE,<br><br>Plaintiffs,<br><br>vs.<br><br>COMPASS VISION, INC. AND NATIONAL MEDICAL SERVICES, INC. D/B/A NMS LABS.<br><br>Defendants. | Case No. CV 07 5642 BZ<br><br>**NMS LABS REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[Fed. R Civ. P. 12(b)(6)]**<br><br>Date:  March 19, 2008<br>Time:  10:00 a.m.<br>Crtrm: G, 15th Floor<br>Judge: Bernard Zimmerman |

In responding to Plaintiffs' Opposition to this Motion to Dismiss, NMS Labs wishes to succinctly state its positions at issue: 1) NMS Labs did not owe Plaintiffs a duty to set a different "cut off" level for EtG reporting to Compass Vision; 2) Plaintiffs are not entitled to recover emotional distress damages against NMS Labs; 3) Plaintiffs may not maintain a cause of action for punitive damages against NMS Labs.

Plaintiff's Opposition attempts to counter these contentions by suggesting that this court should not consider this motion because it has previously decided these issues in *Wilson v.*

*Compass Vision et al.*, but asks this court to reconsider Judge Benitez's ruling in the *Quisenberry* matter which dismissed plaintiff's claim for emotional distress damages.

Defendant respectfully requests that this court consider this motion on its own merits, and submits that the court may consider other relevant decisions by other courts, on identical issues, as persuasive authority.

### a) California Law Does Not Impose on Testing Laboratories Any Duty of Care to Drug Test Subjects

Plaintiffs cannot cite to a single California case which supports their request for this Court to recognize a duty of care owed by a testing laboratory to a drug test subject. There is certainly no controlling legal precedent for expanding such a duty even where the laboratory properly tested and reported the drug (or metabolite) level at issue.

There are a number of significant facts which are not subject to dispute in this litigation. Nowhere do Plaintiffs allege that NMS Labs improperly tested the urine samples provided to them. Nowhere do Plaintiffs allege that the urine samples were improperly collected or handled by Compass Vision. Plaintiffs nowhere dispute that the reported EtG levels accurately reflect the actual EtG levels in Plaintiffs' urine samples which were tested. Lastly, Plaintiffs concede that the EtG testing accurately tests for metabolites of alcohol. Plaintiffs simply allege that NMS Labs negligently promoted and interpreted the EtG testing.

However, NMS Labs did not owe a duty of care to any plaintiff with regards to the promotion or interpretation of the EtG testing. It did not market the test to the plaintiffs, nor did it ever report its interpretations or findings to any plaintiff. At no time did NMS Labs ever contract with any plaintiff or assume any contractual or legal obligation to any of them. Plaintiffs never paid any money to NMS Labs for any services, and NMS Labs never accepted any money from plaintiffs. NMS Labs tested the plaintiffs' urine at the request of Compass Vision. Compass Vision, not any individual plaintiff, was the customer of NMS Labs. The

only party with legal standing to complain about NMS Labs' services in connection with this work is Compass Vision, who alone contracted with them to perform the testing. And in this context it cannot be maintained that these plaintiffs were even unintended third party beneficiaries of this contract.

There is no legal authority in California supporting the expansion of a testing laboratory's duty such as plaintiffs seek here. Such a duty would allow lawsuits against testing laboratories even where they have *correctly* reported test results. NMS Labs took no action against any Plaintiff's license. It had no authority to make recommendations with regards to their involvement in their recovery program. It did not and could not suspend them or extend the length of their programs. It merely provided an accurate EtG test result to Compass Vision and offered no recommended action.

The previously cited case of *Caputo v. Compuchem Labs Inc.*, 1994 WL 100084, aff'd 37 F.3d 1485 (3rd Cir. 1994) is most closely on point to the present situation. In that case, as here, plaintiff was subjected to a drug screening test and provided a urine sample which underwent analysis. There was no dispute that the test results accurately reported the morphine levels in Caputo's urine, only whether such a low level should have been reported as a "positive" finding. As the court put the issue [t]hus, the instant dispute centers on how the numerical results obtained from the standard and usual drug test used by... the defendant...should have been reported. Since there is no dispute as to what the numbers actually were, the only question in this action is whether those numbers were appropriately interpreted by the defendant and appropriately reported as a positive drug test result." *Caputo* at 1.

The Court in *Caputo* declined to extend a duty on the party of the testing laboratory to the drug test subject. No requirement was imposed on the testing laboratory to communicate to its client (plaintiff's employer) that the subject's test results were a "weak" positive, and may not be indicative of substance abuse. There was no duty on the part of the laboratory to ensure

competent medical review of the results of the testing. Lastly, the court failed to find the testing laboratory owed plaintiff any duty to elevate or re-set the baseline or "cut off" for positive test results.

Similarly, in this instance there is no dispute that the levels of EtG reported in Plaintiffs' urine accurately reflected the actual levels of EtG. Plaintiffs simply contend that the levels of EtG found were too low to be considered a "positive" finding and that NMS Labs misinterpreted the EtG results as positive because they had set the "cut off" level too low. NMS Labs provided the test results to its customer, Compass Vision. It identified the cut-off levels for a "positive" EtG test, and accurately communicated the Plaintiff's EtG levels. Consequently the case of *Caputo* is established legal precedent for the proposition that defendant NMS Labs owed no duty to Plaintiffs.

Plaintiffs seek to cloud the significance of a positive EtG finding by quoting the SAMHSA Advisory in their amended complaint, and again in their opposition to this motion. However, the Advisory simply cautions a Medical Review Officer from relying on the EtG result as "primary or sole evidence that an individual…has truly been drinking". The EtG result is a "valuable clinical tool" but should not be the "sole" basis of legal or disciplinary action". NMS Labs provided the EtG results to Compass Vision, which in turn provided it to the Medical Review Officer. The extent to which the EtG results factored in to any disciplinary action taken against plaintiffs was determined by the Medical Review Officer and the relevant State Boards – not NMS Labs. And, as the court in *Caputo* concluded, NMS Labs is entitled to "assume that the test results would be appropriately reviewed by knowledgeable medical personnel." *Caputo* at 4.

Plaintiffs have also sought to inject a letter from Physician's Health Programs to an unnamed "PHP Participant" as evidence supporting the unreliability of EtG test results. In fact the letter indicates Dr. Martynink's belief that subsequent research will "validate the efficacy of this testing in identifying ethyl alcohol ingestion". EtG testing was temporarily suspended in

some circles because the usefulness and practicality of results were limited as a result of the "highly emotional climate" of a controversy contributed to in no small part by these plaintiffs and their counsel. Despite the fact that a single program in the nation has apparently suspended EtG testing in the wake of this litigation, it remains true that both the California Board of Registered Nurses and Board of Pharmacy, the two relevant authorities in this litigation, are aware of the SAMSHA advisory and Plaintiffs' criticisms, and have confirmed their desire to continue to include EtG testing of their recovering providers.

While Plaintiffs request the Court to consider this unauthenticated letter from they object to this Court considering the *Garlick* Court's opinion, although it involves identical issues as raised here. The court may of course consider the ruling in the nearly identical case of *Garlick v. Quest Diagnostics, Inc.*, et. al., pending in the United States District Court for the District of New Jersey, Case No. 06-cv-6244, as persuasive authority in this case. While it is not binding precedent its ruling certainly makes clear the need for consistent judicial treatment of these cases.

### b) Plaintiffs Cannot Recover for Emotional Distress Damages

While California law does allow, in some instances, for the recovery of emotional distress damages in the absence of concurrent physical injury, such damages are not allowable here. Such a claim for emotional distress damages must be supported by an independent cause of action, such as intentional or negligent infliction of emotional distress. Intentional infliction of emotional distress is based on a defendant's "unprivileged" commission of an "outrageous act" with the intent to inflict mental suffering. *State Rubbish Collectors Assn v. Siliznoff* (1952) 38 C2d 330. An essential element of this cause of action must be "extreme and outrageous conduct" on the part of the defendant. Such conduct "exceeds all bounds of human decency usually tolerated in a civilized society". *Potter v. Firestone* (1993) 6 C4th 965, 1001. Furthermore, such conduct must be directed primarily at a particular individual and be intended

to cause that individual severe emotional distress. *Christensen v. Super. Ct.* (1991) 54 C3d 868, 903.

The other cause of action which can give rise to emotional distress damages in the absence of any physical injury is negligent infliction of emotional distress. The seminal case for this theory is *Molien v. Kaiser* (1980) 27 C3d 916, which is dealt with in some detail in Plaintiff's opposition. In *Molien* the Court allowed a negligent infliction of emotional distress cause of action to stand where a doctor negligently advised a husband of his wife's erroneous diagnosis of syphilis. Had the doctor merely communicated the misdiagnosis to the wife and not to the husband directly, the husband would have had no cause of action. *Kossel v. Super.Ct.* (1986) 186 CA3d 1060. Although *Molien* does not require that the emotional distress of a plaintiff be "highly unusual" it is required that such claimed emotional distress be sufficiently "severe" so as to be actionable. *Burgess v. Gupta* (1992) 2C4th 1064, 1079.

*Molien* was analyzed by Judge Benitez in the Oder issued in the *Quisenberry* action taking into account the circumstances giving rise to the instant EtG claims. Judge Benitez, for numerous reasons, was unpersuaded that Plaintiff's claims came anywhere near the necessary showing for recovery of emotional distress damages. Judge Benitez writes:

> It is, therefore, quite possible that California courts will allow a recovery of damages for emotional distress by lab patients in some circumstances were emotional distress is predictable and highly unusual. For example, an erroneous lab diagnosis labeling an individual as being HIV-positive or as having another type of serious illness would undoubtedly cause the patient severe emotional distress, even in the absence of a physical injury. Such an individual would not know for sure whether her diagnosis is erroneous, and she would most likely assume that she is suffering from a **serious or life-threatening illness**. Because of this **uncertainly surrounding her health or even a possibility of an impending death,** she may suffer severe emotional distress even in the absence of a physical injury.
>
> Meanwhile, an individual whose tests results indicate she had been drinking is unlikely to suffer highly unusual emotional distress. First, these test results are not likely to suggest that she has a serious or a life-threatening health condition. Furthermore, in this scenario, an individual would know with certainty whether she had, in fact, been drinking and thus she would immediately recognize that the lab results are erroneous. Therefore, even taking Plaintiff's allegations in this case as true, any distress suffered by Plaintiff does not rise to the level so "severe" or

"highly unusual" that it would justify allowing recovery of emotional distress damages absent a physical injury.

(Order, 9:6-24.)

Similarly, the allegations in Plaintiffs' Amended Complaint in the instant action do not give rise to a right to recovery for damages for emotional distress. Plaintiffs do not allege that they were misdiagnosed with any serious illness or disease. Plaintiffs positive test results showing alcohol consumption, especially where, as here, they claim they had not ingested any alcohol, would not even have lead them to believe they were suffering from a serious or life-threatening illness. If, as they claim, they had not been drinking, then there would have been no uncertainty surrounding their health whatsoever -- and clearly no possibility of impending death. The considerations weighed by the court in *Molien* in permitting plaintiff to maintain a claim for emotional distress damages are simply not present here.

Under California law, NMS Labs cannot be held liable for negligent infliction of emotional distress to any of these plaintiffs. NMS Labs did not communicate the EtG results directly to any plaintiff. NMS Labs did not owe a duty to any of these drug tested subjects. Rather, any communications, in the form of discrete and confidential sample reports, were made directly to its customer, Compass Vision. Moreover, while there was a separate cause of action for negligent infliction of emotional distress alleged in the *Molien* case, such a cause of action is not alleged in the instant action, and in fact was dismissed by this Court pursuant to a 12(b)(6) Motion to Dismiss in the related case of *Wilson v. Compass Vision*.

While Plaintiffs reiterate certain purported facts surrounding each of their respective claims and assert that Compass Vision somehow caused harm to their reputations for which they should be permitted recovery, Plaintiffs omit some critical facts of which, in the interests of fairness, this Court should be made aware. For example, it is a fact that Plaintiffs are admitted drug/alcohol users who were determined by the California Board of Nursing and/or the Board of Pharmacy to have abused their positions of trust as nurses or pharmacists and who have been found to have violated various laws. Plaintiff Cleveland, leaves out from her factual

scenario the fact that she admitted that, while on duty working as a nurse, she signed out various drugs under the names of her patients, forged physicians' signatures on prescriptions, and performed her nursing duties while under the influence of drugs .[1] Plaintiff Laura Fujisawa, a pharmacist, leaves out the fact that she admitted to stealing large quantities of both prescription and non-prescription drugs from her employer. Ms. Fujisawa further admitted to taking drugs, including cocaine, while working as a pharmacist and dispensing drugs to members of the public. Plaintiff Tracy Moore omitted from her own factual recitation the fact that the Accusation filed by the Attorney General for the State of California before the Board of Pharmacy against her included charges of dishonesty, fraud, deceit or corruption, as well as use of controlled substances, arising from her theft of large quantities of drugs from her employer while she worked as a pharmacist. Plaintiff Cynthia Daniels omitted from her factual scenario the fact that she admitted that, while on-duty as a pharmacist, she stole large amounts of various controlled substances from her employer, admitted to stealing other merchandise from her employer while under the influence of controlled substances/dangerous drugs, and that she was arrested on suspicions of embezzlement.

Thus, it is both unfair, as well as disingenuous, for Plaintiffs to lead this Court to believe that NMS Labs is somehow responsible for damaging their reputations, for which they should be permitted recovery. NMS Labs maintains that to the extent their reputations are damaged, plaintiffs are themselves responsible. Any alleged harm to their reputations preceded EtG testing performed by NMS Labs and arose from their admitted participation in illegal conduct and breach of their ethical duties as healthcare providers.

c)  **Plaintiffs Cannot Recover Punitive Damages Against NMS Labs**

Plaintiffs' opposition brief is silent with respect to NMS Labs' argument that punitive

---

[1] The Accusations filed against Plaintiffs and Plaintiffs' Stipulated Settlements and Disciplinary Orders, setting out the circumstances leading to their respective Boards' Disciplinary action against them, are a matter of public record and can be accessed by the general public by simply going to the Board of Pharmacy, Department of Consumer Affairs and/or Board of Registered Nursing, Department of Consumer Affairs.

damages are not recoverable against it. California law requires that punitive damages be proven with "clear and convincing evidence" of fraud, oppression or malice. Not only have plaintiffs failed to appropriately plead specific facts constituting the requisite fraud, oppression or malice under Civil Code section 3294, but California law provides that in certain situations such as here involving claims against health care providers "no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code". CCP section 425.13.

A clinical laboratory such as NMS Labs is a "health care provider". A clinical laboratory, licensed pursuant to chapter 3, division 2 of the Business and Professions Code is defined in section 1206, subdivision (a)(3), of that chapter as: "[A]ny place used, or any establishment or institution organized or operated, for the practical application of the clinical laboratory sciences. That application may include any means which applies the clinical laboratory sciences."

In the case of *Johnson v. Superior Court* (2002) 101 Cal.App.4th 869, the Court found that a sperm bank was a "health care provider" for purposes of the procedural requirements on a claim for punitive damages brought by parents of a minor child who was conceived by use of sperm from a donor with an hereditary kidney disease, and thus parents were required to demonstrate substantial probability that they would prevail; The sperm bank was licensed as a clinical laboratory and as a tissue bank and its service was inextricably identified with the health of humans.

The court in *Coe v. Superior Court* (1990) 220 Cal.App.3d 48, 269 Cal.Rptr. 368 reached a similar result in concluding that a blood bank was a "health care provider" for

purposes of MICRA. Additionally, there is case law indicating that and there is no question that donor screening and blood testing are "professional services" for purposes of MICRA (see Civil Code 3333.1, subd. (c)(2); 3333.2, subd. (c)(2); *Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 7 Cal.Rptr.2d 101.

## CONCLUSION

For the foregoing reasons it is respectfully requested that the Court grant this Motion to Dismiss, by finding that defendant NMS Labs owes no duty of care to the drug-tested plaintiffs, and that plaintiffs may not maintain an action for recovery of general damages or punitive damages in this matter. At a minimum the Court should recognize in its order that this motion involves a controlling question of law as to which there is a substantial ground for a difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

DATED: February 22, 2008

Respectfully submitted,

LAW OFFICES OF SAMUEL G. GRADER

/S/ Christian Green

---

Christian Green
Attorneys for Defendant

# CERTIFICATE OF SERVICE

Matter: Cleveland v. Compass Vision, Inc.
United States District Court, Northern District Case No.: 3:07-cv-5642 BZ

    I am a citizen of the United States, over the age of 18 years, and not a party to or interested in the within entitled cause. I am an employee of the Law Offices of Samuel G. Grader and my business address is 1860 Howe Avenue, Suite 350, Sacramento, California 95825. On this date, I served the following documents:

**Defendant NMS Labs' Reply Opposition to Plaintiffs' Motion to Dismiss**

____    by placing a copy thereof enclosed in a sealed envelope with postage thereon fully prepaid. I am readily familiar with our firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service at Sacramento, California, on the same day in the ordinary course of business. Said correspondence was addressed as set forth below.

_XX_    by having a true copy of the documents listed above transmitted via email to the names, addresses via the US District Court, Northern District website.

____    by causing personal delivery of a copy thereof to the person or the office of the person at the address listed below.

| **Attorney for Plaintiff** | **Attorney for Defendant Compass Vision, Inc.** |
|---|---|
| Joshua A. Ridless<br>Paul A. Moore, III<br>Law Offices of Joshua A. Ridless<br>244 California Street, Suite 300<br>San Francisco, CA 94111<br>Tel: 415-614-2600  Fx: 415-480-1398 | Catherine A. Salah<br>Gordon & Rees LLP<br>275 Batter Street, Suite 2000<br>San Francisco, CA 94111<br>Tx: 415-986-5900  Fx: 415-986-8054<br>Email: csalah@gordonrees.com |
| Norman Perlberger<br>Eliot Lewis<br>Pomerantz Perlberger & Lewis<br>700 Stephen Girard Bldg<br>Philadelphia, PA 19107<br>Tel: 215-569-8866 | |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **February 27, 2008**, at Sacramento, California.

                                            /S/Deborah J. Weidle
                                            Deborah J. Weidle